DORÉ, Judge.
This case arises out of an intersectional collision which occurred on February 11, 1950 at about 11:30 A.M. in the City of Baton Rouge, at the intersection of Park Boulevard and Terrace Street between an automobile owned and operated by A. E. Swanson and being driven north on Park Boulevard and an automobile owned and operated by W. O. Lepine, being driven west on Terrace Street. The plaintiff, Federal Insurance Company, was the collision insurer of A. E. Swanson, and sues the defendant, W. O. Lepine, for the amount of damages paid over by it to A. E. Swanson, being the actual cash value of the automobile, less the usual $50.00 deductible and less the salvage value of Swanson’s automobile, which it is claimed was totally demolished.
Plaintiff sets forth that Park Boulevard is a favored street and that Terrace Street, at the intersection of Terrace Street and Park Boulevard, had a large stop sign; that at the time of the collision the Chevrolet automobile of A. E. Swanson was being operated at a safe, prudent, and lawful rate *84 of speed and was half way across the said intersection when it was suddenly struck on the right rear side by the Ford automobile driven by defendant Lepine, the said impact knocking the Chevrolet automobile against the neutral ground curb and turning it over and completely demolishing the said Chevrolet which had a fair and reasonable value of $450.00 and the insurance company sues for $400.00 and in the actual trial reduced its claim to $312.50, being $400.00 less $87.50 which it received for the demolished automobile as salvage.
The plaintiff alleges that the accident and resulting damage was due to the sole negligence of defendant Lepine in the following respects:
“(a) In failing to stop at the stop sign at the corner of Terrace Avenue and Park Boulevard.
“(b) In driving his automobile at an unlawful and high rate of speed in excess of the speed limit for the City of Baton Rouge.
“(c) In failing to keep his automobile under control.
“(d) In operating a vehicle with improper brakes.
“(e) In failing to keep a proper lookout.
“(f) In operating his vehicle in a reckless and unlawful manner.”
The defendant in his answer avers that at the time of the collision, the defendant was proceeding in a westerly direction on Terrace Street at a careful and reasonable rate of speed, keeping a proper lookout and driving in his proper lane of traffic; that as he approached the intersection of Terrace Street with Park Boulevard he brought his automobile to a complete stop in obedience to a sign erected by proper authorities before entering Park Boulevard, and after looking both ways, placed 'his car in first gear and cautiously drove out into Park Boulevard, when suddenly a 1941 Chevrolet driven by A. E. Swanson suddenly appeared to the left, being driven at a dangerous, excessive and illegal rate of speed and in a careless and reckless manner, and crashed into the front part of defendant’s Ford; that the accident was caused solely and entirely by A. E. Swanson particularly in the following respects:
“(a) Driving at a dangerous, excessive and illegal rate of speed in violation of the ordinances of the City of Baton Rouge, which speed is alleged to have been in excess of 45 mph, which negligence was the proximate cause of the accident herein.
“(b) Driving the said vehicle without keeping the same under proper control, which said negligence was the proximate cause of the accident herein.
“(c) Driving the said vehicle without keeping a proper look-out for other traffic traveling upon Terrace Avenue, which said negligence was the proximate cause of the accident herein.”
Defendant contends that he was free of any negligence 'but in the alternative pleads the doctrine of last clear chance in that the driver of the 1941 Chevrolet could have turned slightly to his left and avoided said accident. In the further alternative, in the event that he should be found guilty of negligence and in the further event that it should be found that the doctrine of last clear chance is not applicable, defendant pleads that A. E. Swanson was guilty of contributory negligence, imputable to plaintiff herein, barring recovery.
After trial of the case, the trial judge rendered judgment in favor of plaintiff for the full sum of $312.50 plus legal interest from judicial demand until paid. The defendant has appealed.
The case involves strictly questions of fact and since the trial judge has not favored us with written reasons for his judgment, we do not know exactly on what facts he based his final conclusion, but necessarily he attributed the accident solely to the negligence of defendant Lepine.
The measure of damages in the amount of $312.50 is supported by the preponderance of the evidence and the subrogation from A. E. Swanson to the plaintiff has been proved, so that the only question involved is the question of liability.
It is definitely shown that Park Boulevard, a paved street, running north and south is a right of way street and that it is *85 a two-lane street with a neutral ground in the center thereof. The traffic lane on the east side of the neutral ground at the site of the collision measures eighteen feet eight inches (18'8"). At the time of the collision A. E. Swanson, plaintiff’s subrogor, was traveling north in this lane. Terrace Street, also a paved street, runs east and west, and is a stop street at the intersection with Park Boulevard and measures twenty-four feet two inches 24' 2" (with no neutral ground). The defendant Lepine was traveling westerly on this street and as he approached Park Boulevard on the northeast corner of the intersection he was confronted with a stop sign measuring four feet nine inches (4'9") high and located eleven feet (11') from the intersection. The southeast corner of the intersection has a terraced embankment five feet ten inches (5' 10") in height, which apparently would interfere with the vision to the left of a driver proceeding westerly on Terrace Street. These facts are brought out in plats marked D-7 and D-8 and can be further visualized by pictures of the situs, particularly D-5 and D-6.
A. E. Swanson testified that at the time of the collision he was proceeding north on Park Boulevard on his way home from Louisiana State University where he was employed as principal of the Laboratory School. He states that he was traveling at from twenty to twenty-five miles an hour; that as he approached Terrace Street he looked both ways and saw another car going west on Terrace Street; that he used that street a great deal ’himself and knew that there was a stop sign there; that he proceeded on to cross Terrace Street and that at the time that he was about half way across Terrace Street the car going west on Terrace Street struck the right hind wheel of his car and turned his car over unto the neutral ground; and that when he got out it was on its top, the wheels were up and the top was down; that he suffered no personal injury except a few scratches and bruises; that he could not state whether the defendant’s car stopped at the intersection but that when he attempted to cross Terrace Street he estimates that the defendant’s car was about one-third of the block from the intersection; that he assumed that the defendant would stop at the stop sign. He could not estimate the speed of defendant nor could he state whether or not defendant applied his brakes. He further testified as follows:
“Q. Mr. Swanson, how far were you from the intersection when you looked east down Terrace Street? A. I was right close because there is an embankment there, and if I was very far I couldn’t have seen down Terrace to the right.”
The defendant Lepine testified that as he approached Park Boulevard a truck on the right prevented him from seeing the stop sign and that he could not distinguish whether it was a boulevard or not; that he was not familiar with that neighborhood. He states, however, that he stopped when he got at the intersection with his automobile protruding about two feet (2') within the intersection at the most. His testimony was to the effect that while he was in this position the Swanson automobile struck the front part of his automobile with its rear wheel; in other words, side-swiped him; that the Swanson automobile was traveling at a rapid rate of speed and after side-swiping his car continued until it struck the curbing on the neutral ground and turned over.
The defendant Lepine further testifies that he did not see the Swanson car prior to his entry into Park Boulevard. He states that he looked to his left before he entered the intersection but that he could not see to his left because “there was the house, the hedge and the terrace part of the lawn which extends almost all the way to the street itself.”
He then testifies, upon being interrogated by the court, as follows:
“Q. Why didn’t you stop if you couldn’t see ? A. I put my brakes on.
“Q. Didn’t you say you were moving when this thing happened? A. I put my brakes on but the gravel caused me to move.
“Q. If you couldn’t see down that street as you say you couldn’t don’t you know it *86 was your duty to stop? A. I was in the process of stopping.”
Apparently there were no further eyewitnesses to the accident except the two drivers and shortly after the accident it was investigated by Officer Willard R. Ash-ford, Jr., of the Baton Rouge City Police and also Officer Marion Getta. Officer Ashford testified that the accident occurred in the intersection and that defendant’s car left skid marks measuring seven visible paces east of the point of collision. He does say this, that the skid marks extended seven paces east of the point of collision but he does not know just how far behind the intersection and he does not know how far in the lane of traffic the car was when it was struck. ITe further testified that it was indicated by skid marks that the defendant’s car travelled two paces ■after the collision; that the latter skid mark was a turning skid mark going north. He testified in effect that as shown by the police report prepared by the other policeman (in the army and apparently unavailable), which he believes is approximately correct, that the Swanson automobile travelled a distance of approximately thirty-six feet after the impact. He states further that there is a slight incline from Park Boulevard going up Terrace in an easterly direction; that he does not recall seeing any pea gravel on that incline on the day of the accident. He states that the skid mark left by the defendant’s car of two paces from the point of impact was in a sort of curve and it is 'his opinion that the defendant’s car was dragged around slightly to make that skid mark; that the Swanson car dragged defendant’s car two paces. He further testified that at the intersection to the left of a driver going west on Terrace Street, there is a house which obstructs the view of such driver but he could not state how far or how close to the intersection the person would have to be before he could see another vehicle approaching from his left or from his right if he was on Park Boulevard. The officer’s testimony as to the actual point in the intersection where the collision occurred is vague, although it does show that defendant’s car traveled seven paces after application of brakes before the collision occurred-That strongly indicates that he had not come to a full stop while within two feet in the intersection. He was shown the sketch of the situs, D-8, and on this plat he was asked to show the respective positions of the two automobiles after the collision. From his drawing of the positions of the two cars it seems clear that defendant’s car was entirely within the intersection after the collision and even if it were dragged some six feet in a northerly direction in the collision, it would still seem that the defendant’s automobile was approximately in the middle of the intersection at the time of impact and that defendant is in error when he testified that he had traveled only two feet within the intersection and had come to a full stop at the time of the collision.
Another inconsistency that may be noted is the fact that in his answer the defendant stated that he came to a complete stop in obedience to the stop sign and thereupon placed his car in first gear and cautiously drove out into Park Boulevard,, whereas in his testimony he states that he had no knowledge of the stop sign and could not see it because a van truck was parked in front of him and hid the sign from him. Moreover, he does not explain what happened to this truck; whether the-truck proceeded across the intersection or whether he went around the truck or exactly what he did do. It appears to us that the only conclusion to reach from the evidence is that defendant entered this blind intersection without stopping, and admittedly without seeing the on-coming Swanson car. It is our conclusion that the evidence shows that he was guilty of negligence-which was the proximate cause of the accident.
The only serious question in the case is whether or not Swanson was also guilty of negligence which contributed to the accident. The plea of last clear chance does not seem applicable for the reason that the accident happened too suddenly for Swanson to have swerved to his left as. contended by defendant.
*87 The only negligence that could be attributed to Swanson would be that he was traveling at an excessive rate of speed while approaching a blind corner. His testimony as to his speed is that he was not traveling at more than twenty-five miles per hour but the physical fact that he continued a distance of twelve paces after the impact and collided with the curb of a neutral ground on the northwest side of the intersection and then turned over indicates that he was traveling at a faster rate of speed. There is no showing in the record what the speed limit ordinance provided for this street.
In any event, if Swanson is to be believed, in spite of the blind corner, he saw defendant’s automobile approaching at a distance of approximately one-third of the block and also he had full knowledge that Terrace Street was a stop street and as held in the case of Droddy et al. v. Southern Bus Dines, La.App., 2 So.2d 761, 766, he contends that he could proceed forward on the favored street. Plaintiff relies strongly on the Droddy case wherein the court said: “An automdbilist, with knowledge of the location of a stop sign, has the right to rely when crossing the intersection, on the assumption that anyone approaching will observe it, and similarly a traveler on a boulevard or arterial highway has a right to expect an operator of a motor vehicle on an intersecting street to stop before entering thereon, and, with that expectation in mind, the operator of the automobile on the favored street can proceed forward while the other traveler on the intersecting stops at the sign.” See also Smith v. Howard Crumley & Co., Inc., La.App., 171 So. 188, Glen Falls Insurance Company v. Copeland, La.App., 28 So.2d 145 and Anderson v. Louisiana Power & Light Company, La.App., 180 So. 243.
The defendant’s contentions as set forth in his brief are, first, that the accident was caused by the sole negligence of Swanson or at least by his contributory negligence, and, secondly, that the actual impact did not cause the full damages claimed by plaintiff.
As to the first contention, we are of the opinion that from the evidence Swanson was not guilty of negligence in that the preponderance of the evidence shows that he was traveling in the middle of his lane of travel and that even if he were traveling at a fast rate, his speed was not the cause of the accident but that the sole cause was the negligent entry of defendant from a stop street into the favored street. We feel that the defendant would have seen Swanson had he stopped as he said he did and had he been keeping a proper lookout.
As to the second contention with reference to the quantum of damages, we say that since the negligence of defendant was the sole cause of the accident, then we cannot differentiate between the actual impact and the subsequent movement of the Swanson car caused by the impact. Certainly if the Swanson car had not been crashed into 'or intercepted by defendant’s car it would not have crashed into the curb of the neutral ground and turned over on the neutral ground.
As stated hereinabove, we are of the opinion that the quantum of damages has been amply proven.
For these reasons, the judgment appealed1 from is affirmed.