116 So.2d 180 (1959)
Mabel WHITNER, Plaintiff-Appellant,
v.
Aaron SCOTT et al., Defendants-Appellees.
No. 4884.
Court of Appeal of Louisiana, First Circuit.
November 16, 1959.
J. D. DeBlieux, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, TATE, and CULPEPPER, Judges.
*181 CULPEPPER, Judge.
The plaintiff, Mabel Whitner, originally filed this tort action for damages against Aaron Scott and Earl Lee Miller and Miller's liability insurance carrier, New Amsterdam Casualty Company. Plaintiff was injured while riding as a guest passenger in the automobile being driven by Aaron Scott and which was involved in a collision with an automobile owned and being driven by the defendant Earl Lee Miller. Issue was never joined as to the defendant Aaron Scott. The matter was tried by a jury of 12 in the lower court as to the defendants Earl Lee Miller and New Amsterdam Casualty Company and after judgment dismissing plaintiff's suit at her cost she has filed this appeal.
The accident in question here occurred at about 9 o'clock p. m. on April 8, 1956, at the intersection of La. Highway 413 and U. S. Highway 190, near Irwinville, Louisiana. At this intersection Highway 190 is a fourlane thoroughfare running east and west with a neutral ground located between the east bound and west bound lanes. Louisiana Highway 413 is a two-lane, asphalt highway running north and south and crossing Highway 190 at this point. It was a clear, dry night and there was nothing in the immediate vicinity of the intersection to obscure the vision of either one of the drivers.
The plaintiff was a passenger on the back seat of the 1952 Dodge automobile being driven by Aaron Scott in a southerly direction on Highway 413. Although there is some conflict in the testimony as to how many Negroes were in this vehicle, plaintiff's own witnesses admit that there were at least seven, that is, three on the front seat and four on the back seat. They had just left a small cafe located a short distance away on Highway 413. The plaintiff and three of her witnesses, Mary Carter, Melvina Lockett and Ruby Lee Hayes testified that as Scott approached Highway 190 he stopped at the stop sign before he entered Highway 190 and waited for a car to pass going west toward Krotz Springs. These witnesses were not certain as to whether Aaron Scott came to a full stop again at the neutral ground but they all testified that when he proceeded out into the east bound lanes of Highway 190, he was struck broadside by the oncoming vehicle which was being driven by Mr. Miller.
The plaintiff's witness, Arthur Thomas, who was sitting on the front seat of the Scott vehicle, gave a different version and testified that Scott did not stop at the stop sign before he entered Highway 190. The witness also was uncertain as to whether Scott came to a full stop at the neutral ground but he said that when Scott reached the third lane, that is the inside east bound lane of Highway 190, he stopped in the middle of this lane and was struck by the oncoming vehicle driven by Miller.
Aaron Scott did not testify in this case, it appearing from the record that he has since gone to Chicago and his address is unknown. However, Mr. Warren B. Knight, the State Trooper who investigated this accident, testified without objection that immediately after the accident Aaron Scott told him that he did not stop at the stop sign or at the intersection. Trooper Knight placed the point of impact in the third lane, that is the inside east bound lane of Highway 190. Knight also testified that he smelled intoxicating liquor on Scott's breath but that he did not think his driving ability was impaired. This State Trooper also fixed the speed limit on Highway 190 at this point at 60 miles per hour and testified further that in his opinion this was a safe speed at this intersection.
Most of the plaintiff's witnesses testified that they saw the Miller vehicle approaching from their right but none of them could give any distances as to how far away the Miller vehicle was when Scott first entered Highway 190 or when Scott pulled out of the neutral ground.
From this brief resume of the testimony of plaintiff's witnesses it can be seen that *182 they were not at all certain as to how the accident occurred and that they contradicted each other as to several material points.
The defendant, Mr. Earl Miller, testified that on this Sunday, April 8, 1956 he and his wife had been to Lake Charles to attend a reception given by the Eastern Star in honor of his wife who had just been elected Worthy Grand Matron. That night they were driving back toward Baton Rouge at a speed of 60 miles per hour and as they approached the intersection in question Miller saw the lights of the Scott vehicle approaching the opposite side of Highway 190 on Highway 413 but it was going slow and he took no particular notice of it, he assuming that it would stop and yield the right of way to him. Mr. Miller testified that he had traveled this highway many times and that he knew the intersection and knew that Highway 190 had the right of way. Miller testified that although he could not be certain of the distances, he estimated that when he was approximately 50 feet from the point of impact the Scott vehicle pulled into the neutral ground and either slowed down or stopped. He was not certain whether Scott stopped or simply slowed down but he definitely got the impression that Scott was going to yield the right of way. Miller testified that when he was no more than 20 or 25 feet from the point of impact Scott suddenly accelerated and came directly out into the path of Miller's vehicle. Miller testified that he did not have time to apply his brakes or cut to the right or left to avoid the collision. This testimony is substantiated by the State Trooper who found no skid marks for Miller's automobile. As to speed, Miller testified that he had been going approximately 60 miles an hour but when he saw the Scott vehicle he took his foot off the accelerator and he estimated that at the time of the impact he was going between 50 and 55 miles per hour.
Mrs. Earl Lee Miller, the wife of the defendant, testified substantially to the same effect as her husband. She stated that the first time she saw the Scott vehicle was when it was in the neutral ground and that it seemed as if Scott stopped there for a moment and then suddenly came out quickly right into their path. She testified that in her opinion they were no more than 11 or 12 yards from the point of impact when the Scott vehicle pulled out from the neutral ground.
In his argument and brief to this court, the sole grounds urged by counsel for the plaintiff, as a basis for reversal of the finding of the jury, is that Miller had the last clear chance to avoid the collision.
In the recent case of Ballard v. Piehler, 98 So.2d 273, 276, decided by the First Circuit Court of Appeal in 1957, Judge Ellis, in a well reasoned opinion, sets forth the law of Louisiana regarding the doctrine of last clear chance as follows:
"In Brown v. Louisville & N. R. Co., D.C., 135 F.Supp. 28, affirmed 5 Cir., 234 F.2d 204, and Segreto v. American Auto Ins. Co., D.C., 137 F.Supp. 194, affirmed 5 Cir., 239 F.2d 641, the essential elements of this doctrine are set forth. These are, first, that the plaintiff be in a position of peril from which he is unaware or unable to extricate himself, second, that the defendant be in a position where he should have or actually did discover the plaintiff's peril and, three, that at such time the defendant could have, with the exercise of reasonable care, avoided the accident. All three of these elements must be present before the doctrine can be applied.
"A late Court of Appeal case; Maryland Casualty Co. v. Allstate Insurance Company, 96 So.2d 340 (Second Circuit) has discussed the doctrine of `Last Clear Chance' or `Discovered Peril' and it sets forth the same requisites as are found in the two Federal cases just cited. This case notes the fact that our jurisprudence was broadened in *183 Rottman v. Beverly, 183 La. 947, 165 So. 153, to include those types of cases where the driver of a car did not see but could have plainly seen plaintiff's peril if he had been looking. Now a defendant might be held liable if, under the circumstances, he should have seen the position of the plaintiff. The former cases held the peril must have been discovered. The Maryland Casualty Co. case went on to cite the Bergeron case, stating the following (96 So.2d 344):
"`In Bergeron v. Department of Highway, 1952, 221 La. 595, 60 So.2d 4, Justice LeBlanc noted that testing the ability of a motorist to avoid an accident involves calculation of: the rate of speed, the time it takes to react to an emergency, and apply the brakes; as well as a determination of the distance in which the vehicle can be brought to a stop, traveling at the given speed. The resulting conclusions which may be arrived at are based principally on assumptions, the difference being one of seconds in the matter of time, and of a few feet only in the matter of distance. He then quoted with approval from Hutcheson v. Misenheimer, 169 Va. 511, 194 S.E. 665, 667:
"`The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.'
"The soundness of the foregoing statement is impressive and we hesitate in cases where the last clear chance doctrine is relied upon to relieve a party of his negligent acts except when opportunity presented to the other party to avert the accident is manifest. Therefore, it has been a rule which has often been followed in our courts that when a pedestrian moves precipitantly from a point of relative safety into the path of a motor vehicle at a moment when it is too late from both point of time and distance to do anything to circumvent an impending accident, the pedestrian may not avail himself of the last clear chance doctrine. Bailey v. Reggie, La.App.1945, 22 So.2d 698; Conway v. Serio, La. App.1950, 47 So.2d 126; Kimble v. Airco Refrigeration Service, Inc., La. App.1952, 57 So.2d 788; Hall v. Alfortish, La.App.1952, 60 So.2d 723; Dupuy v. Veazey, La.App.1953, 63 So. 2d 756; Moore v. Moran, La.App. 1954, 74 So.2d 767.'
"The only issue here is whether the defendant discovered or should have discovered a perilous position of the plaintiff in time to avoid the accident by the exercise of reasonable diligence and care. It is extremely difficult if not impossible to determine from the record exactly how far away the defendant was from the plaintiff when the situation of peril was created. From all of the evidence the trial court concluded this distance to be about 70 feet and that at the time the defendant's vehicle was traveling at the approximate speed of 40 miles per hour or 58 feet per second. At this speed the defendant could not have brought his car to a stop before reaching the plaintiff no matter what care he exercised."
In the present case the peril was not created until the Scott vehicle left the neutral ground at which time the Miller automobile was only 25 feet away according to the testimony of Mr. Miller and only 36 feet away according to the testimony of Mrs. Miller. The Miller vehicle traveling at 55 miles per hour was going 80 feet per second. At this speed the defendant could not have brought his car to a stop or avoided the accident no matter what care he exercised.
Counsel for the plaintiff argues that when Miller was four hundred yards from the intersection and saw the Scott vehicle *184 slowly approaching the opposite side of Highway 190 on this side road, he should have at that time begun to take precautionary measures to avoid this accident. In the case of Gautreaux v. Southern Farm Bureau Casualty Company, 83 So.2d 667, 669, decided by the First Circuit Court of Appeal in 1955, the Court held as follows regarding the duty of motorists on the favored street:
"To paraphrase the rule we have stated several times: A motorist crossing an intersection has the right to rely on the assumption that those approaching it will respect a stopsign which the motorist knows is located there, and accordingly he may proceed. If, however, in driving on the favored street he sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, the motorist may himself be under a duty of stopping if by the exercise of reasonable care on his part the accident could have been avoided at the time he saw or should have seen the other vehicle violating its legal duty to stop before entering the favored thoroughfare. See Blashfield, Cyclopedia of Automobile and Practice, (Perm. Edition) Volume 2, Section 1032, pp. 333-334, cited in Miller v. Abshire, La.App. 1 Cir., 68 So.2d 143; Droddy v. Southern Bus Lines Inc., La. App. 1 Cir., 26 So.2d 761; Termini v. Aetna Life Insurance Co., La.App. 1 Cir., 19 So.2d 286. See also Federal Insurance Co. v. Lepine, La.App. 1 Cir., 55 So.2d 83, where excessive speed on part of driver on main thoroughfare at blind intersection was held not to be proximate cause of accident.
"In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the side streets, but instead concentrate most of their attention on the path ahead, relying on their legal `right of way'. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists' powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred."
If the Scott vehicle moved slowly out into the neutral ground and then momentarily paused or stopped the defendant, Miller, could safely assume that Scott was not going to try to cross the highway immediately in front of him, and there was no peril presented until Scott made his sudden move from the neutral ground. Miller was aware of this peril as soon as it was created but by that time it was simply too late for him to avoid the accident.
We conclude that there was no manifest error in the judgment appealed. As was stated in Norman v. State, La.App., 69 So.2d 120, 131: "It has become axiomatic that the findings of a trial judge on questions of fact will not be set aside nor disturbed by an appellate court in the absence of manifest error. The same principal is applicable to a consideration of the verdict of a jury. Consistent adherence to this rule is evidenced by a long line of cases."
For the reasons hereinabove set forth the judgment appealed from the lower Court is affirmed.