CULPEPPER, Judge.
This is a suit for damages allegedly sustained by the plaintiff in an intersectional automobile accident which occurred in the City of Baton Rouge on November 1, 1956. After trial on the merits the lower Court rendered judgment in favor of the plaintiff and against both the defendants, Great American Indemnity Company and State Farm Mutual Automobile Insurance Company, in solido in the sum of $8,500. The judgment against Great American Indemnity Company was limited by the provisions of the insurance policy involved which had a maximum applicable limit of $5,000. Both defendants have appealed suspensively to this Court.
The accident upon which the plaintiff’s suit is based occurred at approximately 4 o’clock P.M. on November 1, 1956 during daylight hours and on a clear dry day. Prior to and at the time of the accident, the plaintiff was riding on the front seat of a Mercury automobile driven by her husband, John C. McLehaney and insured by the defendant Great American Indemnity Company. Also riding in that vehicle at the time of the accident was Mrs. W. B. Singletary, who was seated on the front seat next to the right front door. At the time of the trial, Mrs. Singletary was ill and unable to testify. Prior to, and at the time of the accident, the McLehaney vehicle was being driven in a southerly direction on Richland Ave. which is intercepted by Broussard in a residential section of the City of Baton Rouge. The McLehaneys and Mrs. Singletary were en route to a housewarming party at the new Methodist Church parsonage.
The other vehicle involved in the accident was occupied only by its driver, Edward L. Berdon, who was traveling east on Broussard Street in his Plymouth automobile which was insured on the day of the accident by State Farm Mutual Automobile Insurance Company.
At the intersection Broussard is the right of way street, there being stop signs on Richland requiring vehicles traveling on Richland to stop and yield the right of way to traffic on Broussard Street. The speed *71 limit was 30 miles per hour. Broussard is a heavily traveled street, being one of the main traffic arteries for east-west traffic in the southern part of Baton Rouge. Rich-land is a much less used street serving only local or neighborhood traffic.
Mr. Berdon testified that he remembers he was traveling east on Broussard Street and he remembers approaching the intersection of Richland at a speed of approximately 25 miles per hour but he has no recollection of seeing the McLehaney vehicle prior to the accident. The evidence shows that Berdon received a serious head injury in the accident and was immediately rendered unconscious from a brain concussion. He does not remember anything until he woke up in the hospital.
Mr. McLehaney, who is 78 years of age but in good physical condition except for a hernia, testified that he was proceeding south on Richland Avenue at a speed of 15 miles per hour. He was not familiar with this intersection and did not see the stop sign and consequently did not stop or even slow down. He testified that he had a clear view in both directions on Broussard Street and that he did not see any cars coming so he just proceeded on across the intersection. As he entered the intersection he glimpsed Berdon and applied his brakes just before the impact. The front portion of the Berdon vehicle struck the right front door of the McLehaney vehicle.
Sgt. George Bannister, of the Baton Rouge Police Dept., investigated this accident and he testified that he established the point of impact as being in the intersection at a point eight feet north of the south boundary line of Broussard Street and four feet east of the west boundary line of Richland Avenue. Broussard Street is only 20 feet in width so this places the point of impact just 2 feet south of the center line of Broussard Street. Sgt. Bannister found that the McLehaney vehicle had left eight feet af skid marks prior to the time of collision but he found no skid marks left by the Berdon vehicle prior to the accident. Bannister found that the McLehaney vehicle, had, after the impact, traveled a distance of 102 feet and come to rest in the front yard of a dwelling located on the southeast corner of the intersection and that the Berdon vehicle had, after the impact, traveled a distance of 12 feet and come to rest approximately at the southeast corner of the intersection. From the physical evidence Sgt. Bannister estimated the speed of the McLehaney vehicle at 20 miles per hour and the speed of the Berdon vehicle at 25 miles per hour at the time of the collision.
The plaintiff, Mrs. McLehaney, testified that she is 77 years of age and does not know how to drive an automobile. She stated that in her opinion her husband was a good driver and she never interfered with his driving. She testified that immediately prior to the impact she may have been talking to Mrs. Singletary but is not certain of this and that she did not see the stop sign and did not see the Berdon vehicle until immediately before the impact when it was too late to give any warning to her husband. Although the defendants have argued that Mrs. McLehaney was blocking the vision of her husband, there is no evidence to substantiate this contention. Mrs. McLehaney was sitting in the middle of the front seat but she was not doing anything unusual to block the driver’s vision.
The negligence of Mr. McLehaney is so apparent as to require very little comment. He did not see the stop sign, did not slow down or stop for the intersection, did not see the approaching Berdon vehicle which was in clear view and simply ran out into the favored street directly into the path of Mr. Berdon’s automobile.
The issue of negligence on the part of Berdon is, however, more controversial. Counsel for the defendant, Great American Indemnity Company, contend that the Ber-don vehicle must have been traveling at an excessive speed. They base this argument in part on the testimony of Mr. McLehaney *72 who stated “ — he is bound to have been making plenty of speed because he hit me and demolished his car and mine and drove me across the street and knocked down a stop sign.” It is argued that the severity of the impact indicates excessive speed on the part of the Berdon car. A simple inspection of the photographs filed in evidence showing these two vehicles immediately after the accident does not in our opinion indicate that the Berdon vehicle struck the McLehaney vehicle at a speed of any more than 25 miles per hour which was the speed that Berdon testified he was traveling and also the speed which was estimated by Sgt. Bannister from the physical facts.
It is also argued that additional evidence of Berdon’s unreasonable and excessive speed is the failure of Mr. and Mrs. Mc-Lehaney to see the Berdon car at the time they entered the intersection. This argument has no merit. The evidence is clear that the McLehaneys had a clear view to the west along Broussard Street approximately 75 feet before they even entered the intersection, that is, 75 feet before they reached Broussard Street. Mrs. Mc-Lehaney admits that she was not even looking, so of course she did not see Berdon approaching. Mr. McLehaney would never testify positively whether he looked or not. Certainly this type of evidence cannot establish excessive speed on the part of Ber-don.
It is therefore our opinion that there is no evidence in the record that Berdon was traveling at a speed in excess of 25 miles per hour at the time of the accident.
Counsel for Great American Indemnity Company also contend that Berdon was guilty of negligence which was a proximate cause of the accident, in that he was not keeping a proper lookout and that he made no effort to avoid the collision by applying his brakes or turning his v.ehicle either to the right or to the left. This argument is more serious and requires a careful consideration of the facts and the jurisprudence applicable thereto. Berdon testified that he passed this intersection almost daily and that he knew Broussard Street was a heavily traveled main thoroughfare which enjoyed the right of way over Richland Ave. as well as the other lesser traveled streets on which stop signs were located for some distance in each direction from this intersection. He testified that he remembers traveling along Broussard Street in an easterly direction at approximately 25 miles per hour immediately before reaching Richland Ave. but he does not remember ever seeing the McLehaney vehicle prior to the impact. As previously stated, he was rendered unconscious at the time of the collision and therefore remembers nothing immediately after the accident. Counsel for State Farm Mutual Automobile Insurance Company argue that Berdon, due to his brain concussion, must have suffered a temporary amnesia and that he probably did see the McLehaney car at the last instant before the impact but he simply does not recollect it. This of course is something that is not proved either way. The Berdon vehicle left no skid marks previous to the collision and this indicates that even if Berdon did see the McLehaney car he did not have time to apply his brakes.
Counsel for Great American Indemnity Company have cited no authorities in support of their contention that Berdon was negligent in not keeping a proper lookout but counsel for State Farm Mutual Automobile Insurance Company have called our attention to the case of Gautreaux v. Southern Farm Bureau Cas. Co., 83 So.2d 667, decided by the First Circuit Court of Appeal in 1955 and in which Judge Tate as the organ of the Court held as follows:
“In our opinion, the able District Court correctly felt that the motorist on the favored street should be permitted to rely on the existence of a stopsign inhibiting the entrance of traffic from inferior streets; but we feel that the mere fact he failed to see whether the other automobile did or *73 did not stop does not constitute contributory negligence. To bar recovery, the deficient lookout must be a proximate cause of the accident.
“To paraphrase the rule we have stated several times: A motorist crossing an intersection has the right to rely on the assumption that those approaching it will respect a stopsign which the motorist knows is located there, and accordingly he may proceed. If, however, in driving on the favored street he sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, the motorist may himself be under a duty of stopping if by the exercise of reasonable care on his part the accident could have been avoided at the time he saw or should have seen the other vehicle violating its legal duty to stop before entering the favored thoroughfare. See Blash-field, Cyclopedia of Automobile Law and Practice, (Perm.Edition) Volume 2, Section 1032, pp. 333-334, cited in Miller v. Abshire, La.App. 1 Cir., 68 So.2d 143; Droddy v. Southern Bus Lines, Inc., La.App. 1 Cir., 26 So.2d 761; Termini v. Aetna Life Insurance Co., La.App. 1 Cir., 19 So.2d 286. See also Federal Insurance Co. v. Lepine, La.App. 1 Cir., 55 So.2d 83, where excessive speed on part of driver on main thoroughfare at blind intersection was held not to be proximate cause of accident.
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the sidestreets, but instead concentrate most of their attention on the path ahead, relying on their legal “right of way”. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
The only possible distinction between the factual situation in the Gau-treaux case and that in the present case is that in the Gautreaux case plaintiff testified that although he did not see the other vehicle stop at the stop sign, he did finally see it at a time after it had entered the intersection but too late to avoid the collision. In the present case, it is not shown that Berdon ever saw the McLehaney vehicle prior to the impact. It is our opinion that this difference in the facts of the two cases is not sufficient to distinguish the Gautreaux case from the case at bar because as the Court held in the cited case “to bar recovery, the deficient lookout must be a proximate cause of the accident”. It was only 32 feet from the stop sign to the point of impact. The McLehaney vehicle, traveling at even 15 miles per hour would have traversed this distance in 1.4 seconds. According to the stopping distance charts, Berdon, traveling at 25 miles per hour needed 2.08 seconds to stop. Therefore, even if Berdon had seen the McLehaney vehicle at the instant it passed the stop sign, he could not have stopped in time to avoid the collision. The distances and times here were simply so short that Ber-don could not have avoided this accident.
Counsel for the plaintiff has cited several cases involving intersectional collisions but a careful reading discloses that all of them can be factually distinguished. Each case of course depends upon its own individual facts and circumstances and little purpose would be served by a detailed *74 consideration of the cases cited by the plaintiff. Suffice it to say, that in our opinion, the Gautreaux case cited above is controlling.
As an alternative plea, Great American Indemnity Company asserted the special defense of contributory negligence on the part of Mrs. McLehaney in that she, immediately prior to the accident, had distracted her husband by carrying on a conversation and also that she obstructed the view of the driver as he approached the intersection. We find, as did the lower court, that the evidence does not substantiate this plea of contributory negligence. Both Mr. and Mrs. McLehaney testified that, although they are not certain, the three occupants of the front seat of the automobile may have been conversing but Mr. McLehaney testified positively that he was not distracted by such conversation even if it was taking place. The only evidence that Mrs. McLehaney was obstructing the view of her husband was the simple fact that she was sitting in the middle of the front seat and this in our opinion does not of itself constitute negligence.
It is argued that Mrs. McLehaney was guilty of contributory negligence for failing to warn Mr. McLehaney of the danger of an accident because she testified that she saw the Berdon car “a minute or two” before the accident but she admitted that she did not warn Mr. McLehaney. A reading of the evidence shows clearly that Mrs. McLehaney did not see the Berdon car “a minute or two” before the accident because she stated that she saw the approaching car when it was only a few feet away or at least so close that she had no time to warn Mr. McLehaney even if she had been so inclined.
With regard to the amount of the award in favor of plaintiff, neither of the defendants have made any objection in their briefs before this Court to the award of $8,500. A consideration of the evidence regarding the serious injuries sustained by the plaintiff and the authorities which have been cited in plaintiff’s brief leads us to the conclusion that the award of $8,500 by the' lower court is neither inadequate nor excessive.
For the reasons hereinabove set forth the judgment appealed from is reversed as to the holding therein decreeing liability on the part of the defendant State Farm Mutual Automobile Insurance Company. Judgment is affirmed in favor of the plaintiff Mrs. Laurin T. McLehaney and against the defendant Great American Indemnity Company for the sum of $5,000 together with all costs of this suit, this being the limit of liability on the part of Great American Indemnity Company under the provisions of its insurance policy.
Reversed in part and affirmed in part.