HERGET, Judge.
Separate suits were filed in the District Court by Mrs. Annie P. Guarisco against Clinton Swindle, The Travelers Indemnity Company and Aetna Casualty & Surety Company; and by Jack Guarisco against Clinton Swindle and The Travelers Indemnity Company for damages growing out of an automobile collision at the intersection of Plank Road and Scenic Highway in Baton Rouge, Louisiana, on June 22, 1958 at approximately 11 a. m.
Upon determining in the suit of Mrs. Annie P. Guarisco against Aetna Casualty and Surety Company error was made as to the insurer of Jack Guarisco and the correct name of his insurer was Aetna Casualty Company, a supplemental petition was filed naming said company as the defendant. Counsel for Aetna Insurance Company filed a plea of prescription to the supplemental petition inasmuch as the accident occurred on June 22, 1958 and the *636 supplemental petition was not filed until October 6, 1959 more than one year after the date of the accident. This exception was referred to the merits by the Court. Upon a finding that the exceptor was a joint tort-feasor with the other defendants against whom suit was filed within one year, the Trial Court overruled the plea of prescription. In this Court counsel did not argue or brief the question. However, it becomes unnecessary for us to pass upon the plea of prescription in view of our conclusion on the merits.
The cases were consolidated for trial in the lower court.
The collision involved a 1958 Ford owned and operated by Clinton Swindle and a 1952 Buick owned and operated by Jack Guarisco. Mrs. Annie P. Guarisco, the wife of Jack Guarisco and a guest passenger in her husband’s Buick at the time of the accident, instituted her suit in tort for personal injuries sustained by her in said accident. Jack Guarisco sought to recover in the suit which he filed damages for personal injuries allegedly sustained by him together with medical expenses and other enumerated special damages.
In Mrs. Guarisco’s suit the defendants entered a general denial and also a plea of contributory negligence. In its answer to the suit Aetna Insurance Company, the insurer of Mr. Guarisco, denied his negligence and alleged that the negligence of Swindle was the proximate cause of the collision.
In answer to Jack Guarisco’s petition, defendants, Clinton Swindle and The Travelers Indemnity Company, entered a general denial and, in the alternative, asserted the defense of contributory negligence, alleging that (1) Jack Guarisco was driving at an excessive rate of speed; (2) he failed to maintain a proper lookout; (3) he failed to keep and maintain his automobile under proper control; and (4) he failed to exercise due caution when approaching the flashing yellow light at the intersection in question.
The District Court found Clinton Swindle, the driver of the Ford, and Jack Guarisco, the driver of the Buick, both guilty of negligence proximately causing the accident. In the suit instituted by Mrs. Guarisco, from the judgment rendered' against Clinton Swindle, his insurer The Travelers Indemnity Company, and Aetna Insurance Company, the said defendants bring this appeal. Mrs. Guarisco answered the appeal asking that the award to her for personal injuries of $12,500 be increased to $17,500. In the suit brought by Mr. Guarisco in which judgment was rendered in favor of Clinton Swindle and The Travelers Indemnity Company dismissing said plaintiff’s suit, Jack Guarisco appealed.
The Trial Court in his written reasons for judgment clearly set forth the facts and findings which all counsel concede to be correct except in the conclusions hereinafter referred to. From which judgment we quote, as follows:
“The collision in question occurred at the intersection of Scenic Highway and Plank Road in Baton Rouge. At this intersection Scenic Highway runs north and south and Plank Road runs east and west. Plank Road ends at the intersection and Foss (Fose) Street continues west from the intersection. Scenic Highway is 42 feet wide, with four traffic lanes. The collision occurred on June 22, 1958 at approximately 11 a. m. It was raining and somewhat foggy. The Guarisco car was traveling south on Scenic Highway in the west or outside lane for southbound traffic, and the Swindle car was proceeding west on Plank Road to cross Scenic Highway and enter Foss (Fose) Street. There was a traffic signal light at the intersection flashing red for traffic on Plank Road and flashing amber or yellow for traffic on Scenic Highway.
“The point of collision was established by the investigating officer at 12 feet south of the north parallel line of *637 Plank Road, 5 feet east of the west parallel line of Scenic Highway, and 16 feet west of the center media of Scenic Highway. The damage to the Guarisco car was on the right front, and the damage to the Swindle car was at the right front door just in front of the center post. The Swindle car was spun around and came to rest off the pavement in the southwest corner of the intersection against a guy wire attached to a utility pole. This caused damage to the left side of the car. The Swindle car came to rest 40 feet from the point of collision. The Guarisco car changed ends and came to rest near the point of collision.
“The investigating officer testified Guarisco told him at the scene of the accident he was traveling approximately 20 miles per hour and that when he first saw the Swindle car it was about 20 feet away; that Swindle told him he did not see the traffic light, did not see the Guarisco car, but did come to a stop at the intersection. Mrs. Guarisco testified they were traveling approximately 20 miles per hour, and that she did not see the Swindle car prior to the accident.
“Guarisco testified he was traveling about 25 or 30 miles per hour; that when he first saw the Swindle car it was 50 or 75 feet from the intersection, and that he was then about the same distance from the intersection; that Swindle was traveling about 25 or 30 miles per hour; that when he first saw the Swindle car he decelerated his car; that when he next saw the Swindle car it was about 10 or 15 feet away.
“Swindle testified he stopped at the intersection; that he looked both to the left and the right, and then looked again in both directions, but saw no approaching vehicles; that he proceeded across the intersection at 10 or 15 miles per hour; that when he reached the center of the intersection he saw the Guarisco car 75 or 100 feet away; that Guarisco was traveling 50 miles per hour or faster; that the front end of his car was well over the center line of the intersection when he first saw the Guarisco car; that he then ‘goosed’ his car in an attempt to clear the intersection before Guarisco reached it. He denied telling the investigating officer he did not see the red light or the Guarisco car, or that he was traveling 25 miles per hour at the time of the collision.
“Mrs. Swindle was sitting between her husband and her sister-in-law on the front seat of the Swindle car. It was agreed by all parties that the sister-in-law was not available as a witness. Mrs. Swindle testified Swindle stopped at the intersection; she looked both to the right and the left and saw no approaching vehicles; that Swindle proceeded across the intersection at 10 to 15 miles per hour; she saw the red light but did not see the Guarisco car prior to the collision.
“Joseph A. Polack, a disinterested witness, testified he was a witness to the collision; that he was traveling north on Scenic Highway; that when he was 50 or 75 yards south of the intersection he saw the Swindle car just after it entered the intersection; that it was traveling 25 or 30 miles per hour; that he did not see the Guarisco car prior to the collision; that his eyes were following the Swindle car as it crossed the intersection; that it was drizzling rain, but that visibility was good.”
In his finding of fact, the Trial Court concluded the joint concurrent negligence on the part of both drivers was the proximate cause of the accident and that neither was keeping a proper lookout.
Counsel for Aetna Insurance Company and for Jack Guarisco took exception to *638 that part of the finding of the Trial Court to the effect that Guarisco informed the investigating officer that he was about 20 feet away from the Swindle car when he first saw same. Mr. Guarisco testified that he first saw the Swindle car when he was SO or 75 feet from the intersection traveling at about 25 or 30 miles per hour and that the next time he saw the Swindle car it was about 10 or 15 feet away from him. From the testimony of Sergeant Sanchez, who was the investigating officer, it appears that he asked Mr. Guarisco how far the other automobile was from the intersection when he realized that an accident might take place and he answered 20 feet, but that the officer never asked Mr. Guarisco how far from the intersection the Swindle car was when he first saw it. We therefore are of the opinion Mr. Guarisco first observed the Swindle car when it was some 50 to 75 feet from the intersection and he was at about the same distance. The determination of the question of contributory negligence on the part of Jack Guarisco rests on the resolution of the necessary care and caution he should have taken at this time to avoid colliding with the intersecting Swindle vehicle.
In this Court counsel for Mr. Swindle conceded that Swindle failed to ■observe the red signal light and drove into the intersection at a speed of 25 to 30 miles an hour. They conceded that such action on his part constituted gross negligence and was a proximate cause of the accident but maintained, as found by the Trial Judge, that Jack Guarisco was guilty of contributory negligence, so that the question to be resolved by this Court is whether Jack Guarisco was guilty of negligence contributing to the accident and whether such negligence was a proximate cause of the collision.
Scenic Highway is one of the main arterial highways which is heavily traveled and on which the speed limit at the location this collision took place is 40 miles per hour. In proceeding on these super highways the driver, exercising due care, must give his main attention and observation to the road ahead. Of necessity, to give effective use of said highways for which they were constructed, that is to provide adequately for heavily traveled routes to expedite transportation, the driver is required to maintain a higher speed than ordinarily applicable to minor streets or roadways, so that the speed at which Mr. Guarisco was traveling immediately prior to this accident of 25 to 30 miles per hour was well within the limit. The particular question to be resolved therefore is the action a prudent driver should take traveling at this speed on such super highways upon observing a vehicle approaching an intersection at a speed of 25 to 30 miles per hour 50 to 75 feet therefrom in the face of a red light requiring him to stop.
In this connection, counsel for Aetna Insurance Company and Jack Guarisco have cited numerous cases which hold that a driver on a right-of-way thoroughfare is entitled to presume that a driver approaching the intersection from a less favored street will observe the law and will not impede the path of the superior motorist. Koob v. Cooperative Cab Co. et al., 213 La. 903, 35 So.2d 849; Youngblood v. Robison et al., 239 La. 338, 118 So.2d 431; Robinson v. Great American Indemnity Company et al., La.App., 120 So.2d 855; Gautreaux v. Southern Farm Bureau Casualty Company, et al., La.App., 83 So.2d 667; McLehaney v. Great American Indemnity Co. et al., La.App., 116 So.2d 69; Livaccari v. United Jewish Appeal, Inc., Norman Merlan and Royal Indemnity Company, La.App., 126 So.2d 67 and Emmco Insurance Company and Sam J. Miller v. Ferrara, La.App., 127 So.2d 48. We have given careful consideration to these cases as well as those cited by counsel for Mrs. Guarisco and The Travelers Indemnity Company in which the equally well-settled law is established that when the superior motorist who reasonably realizes in time that the inferior traffic will obstruct his *639 path, he is guilty of negligence should he fail to take every precaution to avoid the collision. Comeaux v. Blanchet, La.App., 69 So.2d 527; Randall and Mrs. Evelyn L. Randall v. Baton Rouge Bus Company, Inc., and Travelers Insurance Company, 240 La. 527, 124 So.2d 535; Henderson et ux. v. Central Mutual Insurance Co. et al., La.App., 111 So.2d 351; Veal v. Audubon Insurance Company of Baton Rouge, Louisiana, La.App., 114 So.2d 648.
In considering the weight to be given to each of these cases in the light of the present factual situation, our views are aptly expressed in the concurring opinion of Justice McCaleb in Randall v. Baton Rouge Bus Company, Inc., et al., supra, in which he stated, 124 So.2d at page 543:
“A consideration of the facts of this case has not convinced me that the bus operator should or could reasonably have anticipated that the driver of the Randall car would not respect the superior right-of-way of the bus by bringing the car to a stop before it preempted the intersection. Under all of our latest cases, we have given increasing recognition to the right of the motorist travelling on right-of-way streets to indulge in the assumption that traffic approaching intersections from less favored streets will observe the law and it is only in exceptional circumstances (which I do not find present in this case), where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431.”
In the recent case of Hunter v. United Services Automobile Association et al., La. App., 129 So.2d 908, where we held a motorist traveling on U. S. Highway 190 guilty of no negligence in failing to anticipate that a motorist on a less favored intersecting highway would cross the path of such driver, we observed:
“A motorist on a through highway, such as U. S. 190, exercising due' care is under no duty to anticipate that another motorist will grossly negligently enter an intersection on the highway in the path of his car traveling at the lawful speed when, because of his proximity to the intersection, such could not be done in safety. Furthermore, even had Mr. Hunter observed the Jarreau vehicle when it crossed the two traffic lanes of U. S. Highway 190 for trafile traveling in an easterly direction, there was nothing about the speed Jarreau was traveling or the manner in which he was driving which would signify he would not stop and accord to Mr. Hunter the right-of-way.
“To accomplish the purpose for which such throughways are designed, a prudent motorist traveling on a super highway, such as U. S. 190, at the lawful rapid permitted speed, must concentrate his attention on the path ahead and is guilty of no negligence in failing to anticipate a motorist on a minor intersecting highway will enter the path of his travel.”
In the case of Livaccari v. United Jewish Appeal, Inc., et al., supra, where the Court had under consideration the contributory negligence of a driver on Highway 61, a heavily traveled four lane road between New Orleans and Baton Rouge, in failing to observe a motorist entering said highway from Highway 51, a two *640 lane less traveled highway confronted with stop signs, said:
“We are of the opinion that the plaintiff was not guilty of contributory negligence. The defendants contend that he should have been able to see the approaching defendant car while it was still some distance away on Highway 51. The plaintiff did not observe the other car during the time he and it were approaching the intersection but he was under no legal obligation to make such an observation. The plaintiff’s view was partially blocked by the parked trucks and, in any event, he had a right to assume that traffic on the less favored highway would observe the law, stop for the traffic sign and yield the right-of-way. Ehtor v. Parish, La.App., 86 So.2d 543; Gautreaux v. Southern Farm Bureau Casualty Co., supra; Marler v. State, La. App., 78 So.2d 26; New Hampshire Fire Ins. Co. v. Bush, La.App., 68 So. 2d 254.” [126 So.2d 69.]
There was nothing about the action of 'Swindle when Guarisco first observed him when he was 50 to 75 feet east of the intersection which could reasonably have •caused Guarisco to anticipate that Swindle would not respect his superior right-of-way and bring his car to a stop before it preempted the intersection in accordance with the red signal flashing at the semaphore, cognizance of which Mr. Guarisco had as lie was a frequent user of Scenic Highway. There were no exceptional circumstances observable by Mr. Guarisco as a prudent motorist which should have served to warn him of any danger in proceeding through the intersection at the rate which he was traveling. On the contrary, to have averted this collision Mr. Guarisco would have been required to resort to the reverse of the rule and instead of indulging in the accepted legal conclusion that ‘Swindle would stop his car before entering the intersection in the face of the red light, Mr. Guarisco would have had to assume that Mr. Swindle intended to run the red light and cross the Scenic Highway in the path of his on-coming car. At the speed Mr. Guarisco was traveling he was afforded two seconds within which to make this decision. Certainly, under the circumstances Guarisco as a reasonable prudent driver would be warranted first in the assumption that Swindle would stop his car at the intersection; or, second, that he would turn left in the lane of traffic beside Guarisco; or, third, that as there was no traffic proceeding on Scenic Highway in a northerly direction that Swindle would proceed across the eastern lanes of Scenic Highway and await Guarisco’s passage to continue on Fose Street. To have averted this accident Guarisco, upon observing the Swindle car, would have, of necessity, had to immediately brake his car with full force under the assumption that Swindle would wantonly and grossly negligently run the red light and cross the Scenic Highway in his path and thereby take his chances of being struck from the rear by a following motorist. Such is not the law and in our opinion this accident resulted solely from the gross negligence of Swindle and Guar-isco was guilty of no negligence.
As a result of the accident Mrs. Guarisco sustained severe injuries and pain which were described in the opinion of the Trial Court, as follows:
“The injuries sustained by Mrs. Guarisco as a result of the collision consisted of a fracture of her left hip, lacerations of her left knee and chin, and general contusions and abrasions. The lacerations in the knee and chin were relatively minor injuries. Both healed satisfactorily. The scar on her chin is scarcely noticeable. The scar on her knee is noticeable because of its dark color.
“Surgery was performed on the fractured hip by Dr. F. C. McMains, an orthopedic surgeon. Mrs. Guarisco remained in the hospital 16 days with traction for about one week, with frequent shots for pain in her leg and *641 arm. She was in bed at her home about a week, used a wheel chair for about a month, a walker for about ten months, and has used a walking cane since.
“Mrs. Guarisco’s troubles were complicated by the fact that for some years prior to the accident she had suffered with diabetes, a heart ailment, and high blood pressure. Following her injuries and throughout her stay in the hospital it was necessary for her to be seen at least twice daily for these chronic ailments by Dr. J. E. Toups, her regular physician.
“Dr. James F. Halley, an orthopedic surgeon, called as an expert medical witness, testified that he examined Mrs. Guarisco on March 4, 1960. He found the fracture of the hip had healed satisfactorily, but was of the opinion that the nail and screw used in the surgery should be removed. He found tenderness over the hip joint at the site of the nail and screw, and was of the opinion the nail and screw are largely responsible for the tenderness and complaints of pain. He found a 25% disability of the left leg resulting from the fracture. It was his opinion that the removal of the nail and pin will remove some of the disability and possibly all of the pain. He estimated the expense of the additional surgery at $500. He stated that it would be less serious than the original surgery.
“The testimony of Dr. McMains is in substantial agreement with that of Dr. Halley. In addition to relating his care and treatment of Mrs. Guar-isco, he expressed the opinion that she has a 20% to 25% disability in her leg which is permanent. He recommended surgery for the removal of the hardware, but was not of the opinion it will lessen the permanent disability of the leg.
“Mrs. Guarisco expressed an unwillingness to undergo the additional surgery for the removal of the pin and screw. Her contention is that her diabetes, heart ailment, and high blood pressure forbid the surgery. Dr. Toups, her regular physician, stated as his opinion that she can undergo the additional surgery, with his accompanying care as before, as safely as she underwent the original surgery. The cost of the additional care by Dr. Toups would be approximately $100.
“The question of additional surgery is one that Mrs. Guarisco must decide. However, the two orthopedic specialists strongly recommend it. They are of the opinion it will lessen Mrs. Guar-isco’s pain, and will be a less serious operation than the original surgery. Her regular physician sees no reason for objecting to it. The total expense for it will be approximately $600. The Court must take these facts into consideration in fixing the award in this case.”
An award of $12,500 was given to Mrs. Guarisco, which, in our opinion, fairly compensates her for the damages she sustained.
For these reasons, the judgment in favor of Mrs. Annie P. Guarisco against the defendants, Clinton Swindle and The Travelers Indemnity Company, in -solido, in the sum of $12,500 together with legal interest from the date of judicial demand until paid, together with costs, limiting the judgment against The Travelers Indemnity Company to $10,000 exclusive of costs and interest, same being the liability policy limits of The Travelers Indemnity Company for injury to one person, is affirmed. And the judgment in favor of plaintiff and against Aetna Insurance Company is reversed and her suit dismissed at her costs as to said defendant.
Judgment affirmed in part and reversed in part.