35 So.2d 849

KOOB v. COOPERATIVE CAB CO. et al.

No. 38515.

April 26, 1948.

Rehearing Denied June 1, 1948.

Harry P. Gamble, Jr., of New Orleans (Lautenschlaeger & Gamble and Gamble &

Gamble, all of New Orleans, of counsel), for plaintiff-appellee.

Clay & Kohlman, James J. Kohlman and Louis J. Dutrey, all of New Orleans (Kullman & Lang, of New Orleans, of counsel), for defendants-appellants-respondents.

HAWTHORNE, Justice.

Plaintiff, John J. Koob, Jr., instituted this suit individually and for the use and benefit of his minor son, John A. Koob, seeking to recover damages resulting from a collision between a motorbike and a taxicab, in which his minor son was injured.

The district court rendered judgment in favor of plaintiff for the use and benefit of his minor son, and against the defendants, Ody C. Nicks and Cooperative Cab Company, in solido in the full sum of $1,121.29, with legal interest from judicial demand until paid, and in favor of the plaintiff individually, and against the above named defendants in solido, in the full sum of $212.-75, with legal interest from date of judicial demand.

The Court of Appeal for the Parish of Orleans reversed the district court and rendered judgment dismissing plaintiff's suit at his costs. On application of plaintiff, this court granted a writ of certiorari to review this judgment of the Court of Appeal.

Plaintiff contends that the accident was caused solely by the negligence of the cab driver; that the driver was grossly negligent in failing to stop before entering an intersection in observance of a stop sign and an ordinance of the City of New Orleans, in failing to afford to plaintiff's son the right of way, and in operating the cab without exercising due caution and without maintaining a proper lookout, in willful disregard of the safety of plaintiff's son.

It is defendants' contention that the operator of the taxicab was free from any negligence whatsoever, and that the collision occurred due to the fault of plaintiff's son in not keeping a proper lookout prior to, and at the time of, the accident; in not having the motorbike on which he was riding under proper control prior to, and at the time of, the accident; in his operation of it at a dangerous and excessive rate of speed, and in his failure to give any warning of his approach to the intersection. Defendants further contend that, if the cab driver was not free from negligence, the plaintiff is barred from recovery for the reason that his minor son was guilty of contributory negligence.

The Court of Appeal in reversing the judgment of the district court came to the conclusion that plaintiff's son was guilty of contributory negligence and for this reason dismissed the suit.

From our analysis of all the testimony and the evidence adduced during the trial of the case in the district court, we find the following facts:

The collision occurred at the intersection of Orleans Avenue and North Alexander

Street in the City of New Orleans in the late afternoon of May 14, 1945. Plaintiff's minor son was proceeding on a motorbike at a reasonable rate of speed, some 15 or 18 miles per hour, along North Alexander Street in the direction of City Park. The street on which he was riding had the right of way over Orleans Avenue at the intersection of these two streets, and stop signs were erected on Orleans Avenue at its intersection with North Alexander Street, requiring motorists traveling on Orleans Avenue to come to a complete stop and grant the right of way to motorists on North Alexander Street. Young Koob resided with his parents about six or seven blocks from this intersection. During vacations he was employed full time at the bicycle concession at City Park, and during the school year he worked there on weekends. Undoubtedly he was familiar with the intersection where the collision occurred and knew that North Alexander was the right-of-way street at this intersection. He lived in the immediate vicinity of the intersection, and one of the most direct and shortest routes from his home at 200 David Street to City Park, where he was employed, was by way of this intersection.

The defendant cab driver, Ody C. Nicks, was driving his cab along Orleans Avenue toward the Lake, and upon reaching the intersection of North Alexander Street he failed to bring the cab to a stop in compliance with the stop sign and as required by the ordinance of the City of New Or-

leans. The cab driver stated that he was aware of the fact that there were stop signs on Orleans Avenue at its intersection with North Alexander Street, and that he considered this a dangerous corner because the City Park busses were routed into Orleans Avenue from North Alexander Street. According to his own testimony, he failed to see or observe the boy approaching on the motorbike until the moment of the collision, which occurred just beyond the center of the intersection of the two streets, nearer the downtown side of Orleans Avnue. John A. Koob, plaintiff's son, as a result of the injuries received had no recollection of the collision or of the events immediately preceding it.

As a result of the collision, plaintiff's son was thrown from the motorbike, not exactly in the direction in which he had been traveling, but in a direction bisecting the direction of travel of the cab and the direction of travel of the motorbike. This is shown by the fact the boy landed at a point on the Lake side of the intersection near the downtown curb of Orleans Avenue on the side of the avenue opposite to that at which he had entered the intersection.

After the collision the cab continued its forward motion to a point some distance beyond the intersection. The motorbike was caught and held on the cab's front bumper, from which place it was dislodged by the cab driver himself.

The damage to the cab was negligible. There was no damage to the front wheel of the motorbike, but the bike was crushed in at the height of the bumper of an automobile from the crash guard in the center back across the rear of the motorbike.

In our opinion, these physical facts show conclusively that the motorbike preempted the intersection and had almost crossed it when it was struck by the oncoming cab, which had failed to stop for the right-of-way street. Moreover, these physical facts completely refute defendants' contention that the motorbike crashed into the left front fender of the cab. The trial judge, who examined the motorbike, as we have, stated during the progress of the trial in the district court that "It doesn't take an expert to see that the full force of the blow struck the side of that bike".

■ The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the loca-

tion of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna Life Ins. Co. et al., La. App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App. 28 So. 2d 145. See also Mayfield v. Crowdus, 38 N.Mex. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., sec. 1032, pp. 216, 217.

■ Under this law, the boy on the motorbike in the instant case had the right to rely on the assumption that the cab driver would observe the stop sign, come to a complete stop, and look in both directions to determine whether it was safe to enter the intersection. There was no duty on the boy to reduce his speed before reaching the intersection merely because he was approaching it. Since the boy preempted the intersection—this is shown by the fact that he was not going as fast as the cab, yet had gone more than half way across the intersection when the cab struck his bike on the right side—, it was too late for him to do anything to avoid the accident after he realized, or should have realized, that the cab was not going to observe the stop sign. His failure to act to avoid the colli-

sion, therefore, could not in any way have contributed to the accident.

The Court of Appeal, in finding that the plaintiff's son was contributorily negligent, placed great reliance on the testimony of one of plaintiff's witnesses, to the effect that she saw the cab approaching the stop sign at an excessive rate of speed and realized that an accident was imminent. The court concluded that the boy should also have seen the cab and realized the danger.

From our appreciation of the entire record, we are convinced that the speed of the cab was somewhat in excess of that of the motorbike, but we do not believe that the cab approached the stop sign and the intersection at an excessive rate of speed, or at such a speed as to make the plaintiff's son aware, if he had seen it approaching, that the driver of the cab was not going to observe the law and bring the vehicle to a full and complete stop before entering the intersection. The fact that the driver was not proceeding at an excessive rate of speed at the time of the collision—the testimony shows that his speed at that time was the same as it was as he approached th stop sign and the intersection—is clearly proved by the physical facts themselves, that is, that, when the automobile weighing in excess of one ton struck the motorbike, as described hereinabove, the damage to the automobile was negligible and the damage to the motorbike, weighing about 150 pounds, was relatively slight to have been inflicted by such a heavy vehicle. The

plaintiff's witness's estimate of the speed of the oncoming taxi at 30 miles per hour is not in accord with the actual physical evidence in this case.

As a result of the collision plaintiff's son was seriously injured. He was taken to the hospital in an ambulance from the scene of the accident and confined in the hospital for a period of one week. During this time he was unconscious about three days and semi-conscious for about three more. Plaintiff's family physician stated that the boy suffered from a fracture of the skull, but defendants contended that his injury was only a cerebral contusion. Either injury, however, is a serious one. On his admission to the hospital the boy was bleeding profusely from the nose and right ear, and fluid withdrawn from his spine contained blood. On returning home from the hospital he remained in bed for a few days and was confined to the house until June 13, approximately a month after the accident. Before the accident the plaintiff's son was a normal, healthy boy, interested in sports and athletic contests. Since the accident he has been very nervous, restless, and irritable. From the time he was injured until the latter part of January, 1946, he suffered from recurrent dizzy spells when he moved his head or stooped down. He continued to report at intervals to the hospital where he had been treated and was not discharged therefrom until August, three months after the accident. The plaintiff's family physician, who kept

the boy under observation, advised the parents to keep close watch on him for a period of two years from the date of the injuries, as the doctor feared that, in the event of strain or excitement, some ill might, even at a late date, occur to the boy as a result of the head injury he had sustained. Upon the advice of the doctor, young Koob was forbidden to engage in competitive sports during this period, his social activities were greatly curtailed for months after the accident, and he was not allowed to do full-time work. We think that all of these facts should be taken into consideration in arriving at the quantum of damages to be awarded.

 Plaintiff answered the appeal taken by defendants to the Court of Appeal, praying that the amount awarded by the judgment of the district court be increased to the sum of $2,509.04. Under the facts and circumstances of this case, we think that the amount awarded by the district court should be increased to the total sum of $2,000 to the plaintiff individually and for the use and benefit of his minor son.

For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and it is ordered that the judgment of the district court, insofar as as it awarded the sum of $212.75 to plaintiff individually, be reinstated and made the judgment of this court. It is further ordered that the judgment of the district court awarding to plaintiff for the use and benefit of his minor son the sum of $1,121.-

29 be increased to make the total award to plaintiff individually and for the use and benefit of his minor son the sum of $2,-000, and, as thus amended, that judgment is made the judgment of this court. Defendants are to pay all costs.

McCALEB, J., recused.