For the reasons assigned the judgment appealed from is affirmed.

95 So.2d 328

Harold RYAN

v.

The ALLSTATE INSURANCE COMPANY OF CHICAGO, Illinois, et al.

No. 42965.

April 1, 1957.

Rehearing Denied May 6, 1957.

F. Carter Johnson, Jr., of Porteous & Johnson, New Orleans, for defendant-appellant.

Maurice R. Woulfe, New Orleans, for plaintiffs-appellees.

SIMON, Justice.

This cause comes to us on certiorari addressed to the Court of Appeal, Parish of Orleans, and involves three cases in tort arising out of the same accident.

The judgment of the Court of Appeal, Parish of Orleans, reversed the district court and held that John S. Bowers who was driving his car on the right-of-way street, with knowledge of the existence of a stop sign on the corner of the intersecting street, was grossly negligent in driving into the path of a truck which had been negligently driven into the right-of-way street with a resulting collision with the car operated by Bowers.

The record discloses that on October 22, 1953, at about 7 o'clock A.M. at the intersection of North Carrollton Avenue and Bienville Street a collision occurred between a Pontiac sedan being driven north on Carrollton Avenue by John S. Bowers and a Ford V-8 truck being driven west on Bienville Street by Leslie Evans. Both thoroughfares have paved two-lane roadways bisected by neutral grounds. A stop sign controls traffic entering North Carrollton Avenue from Bienville Street. The neutral ground on North Carrollton Avenue is 27 feet wide; the one on Bienville

Street is three feet wide. The point of impact was where the north lane of Bienville Street intersects the east lane of North Carrollton Avenue. The Pontiac sedan was struck at about its right front door and was toppled over on its left side.

The three passengers in Bowers' car, Gaston L. Breaux, Alvin E. Eiswirth and Harold Ryan, received personal physical injuries and as a consequence each filed suit for damages jointly against The Allstate Insurance Company of Chicago, Illinois, the public liability insurer of Bowers, and against the operator of, and Christopher Evans, the owner of the truck. Bowers also filed suit for damages against the operator and the owner of said truck. These four suits were consolidated for trial.

After trial on the merits the trial judge rendered judgment in favor of the respective plaintiffs and against the defendant Leslie Evans and dismissed the respective claims as against The Allstate Insurance Company of Chicago, Illinois, holding this defendant to be not liable for the reason that Bowers was free from any primary or contributory negligence in the operation of his car. The claims against Christopher Evans were dismissed by the trial court for the reason that Leslie Evans was on a personal mission and that Christopher Evans had no responsibility, personally or

legally, as a result of the use of the truck by the said Leslie Evans.

The trial judge, finding the defendant Leslie Evans to be impecunious, reduced to one-half the damages awarded to the respective plaintiffs for their personal injuries, allowing, however, the full award for damages as to medical charges and property damage.

Plaintiffs Breaux, Eiswirth and Ryan appealed to the intermediate appellate court which reversed the judgments of the trial court insofar as they dismissed plaintiffs' suits against The Allstate Insurance Company of Chicago, Illinois and thereupon rendered judgment condemning the said insurer in solido with Leslie Evans to pay the damages awarded below on the ground that its insured, Bowers, was guilty of contributory negligence in having failed to observe that the driver of the truck had not complied with the law requiring him to stop at said intersection before entering North Carrollton Avenue. The court of appeal, having concluded the liability of the insurer of Bowers further concluded that irrespective of the impecunious condition of Leslie Evans the plaintiffs were entitled to be paid the full measure of damages sustained by them respectively and accordingly amended the judgment rendered by the trial court.

We are in full accord with the reasons and conclusions reached by the trial court and the court of appeal in respect to the negligence of Evans in the operation of the truck wherein the latter court observed:

"When Leslie Evans approached the corner of North Carrollton Avenue he was confronted with an official traffic sign which required that he bring his vehicle to a stop before making entry into the intersection. Both he and Gillen, who was riding in the truck, stated that the truck was brought to a stop in obedience to the sign and then Evans shifted the gear and started forward into North Carrollton Avenue at a slow rate of speed. The trial judge was satisfied that Leslie Evans not only did not stop before entering the intersection but that he proceeded onward blindly without looking or listening. However, it would make absolutely no difference whether Leslie Evans did or did not stop his truck for he was guilty of negligence in either respect. If he brought his vehicle to a stop, there was the most wanton negligence on his part in proceeding from a position of safety into North Carrollton Avenue without ever seeing the approaching Bowers automobile; and if he made no stop, his negligence is too obvious to discuss."

However, the issue of negligence on the part of Bowers resulted in a conflict of opinions rendered by both courts. The trial court, who had the benefit of observ-

ing the witnesses, found the pertinent facts to be:

"All of them (Plaintiffs) agree that Bowers was a careful driver; that they had no occasion to complain about his driving or his speed, and that neither of the three had any inkling that an accident would happen until just before the crash when one of them saw Evans' truck on Bienville Street approaching and yelled: 'Look out!', followed almost immediately by the crash.

"Bowers was travelling 25 to 30 miles an hour when he entered the intersection. When he approached Bienville he looked to his left to see if traffic was approaching him on the south lane of Bienville or from the lake, and then looked to his right to see if anything was approaching on the north lane of Bienville or from the river. He saw nothing coming from either direction. A motorist approaching Bienville Street on North Carrollton, when reaching 30, 40 feet from the intersection, can glance to his left and see 150 or 200 feet down Bienville Street towards the lake.

"When Bowers reached the property line of Bienville Street and looked to his right from which Evans' truck was approaching, he could only see 150 feet up Bienville because the building on the southeast corner (or the Canal Street river side) is set back twelve feet from the curbing. After entering the intersection the Bowers car travelled the width of the south lane of Bienville Street (about 15 feet), plus the width of the narrow strip neutral ground (3 feet), and an additional 5 feet (or a total of about 23 feet) when it was struck amidships on its right side by the Evans' truck. In view of this, it cannot be said that Bowers entered the intersection blindly without looking.

"Whether he should have looked left and then right, or right and then left, is a matter of discretion; but even assuming that he did not look, but entered the intersection going 25 to 30 miles an hour, he would have been in no better position than if he had been looking because the Evans' truck was either coming to a stop or had stopped, and under the law Bowers would have had a right to believe that the Evans' truck would obey the 'Stop' sign and accord him the right-of-way.

"The fact that the Evans' truck struck the Bowers car broadside after the latter travelled 23 feet, indicates that the Evans' truck illegally entered the intersection.

"The fact that the Evans' truck overturned the Bowers automobile is not necessarily evidence of great speed, because of the law of kinetics dealing with the dynamics of motion, it is much easier to overturn a moving object than one that is still; so that the Evans' truck could easily have turned over the Bowers automobile while it was travelling 25 to 30 miles an

hour across the intersection merely upon a slight contact."

In its analysis of the evidence the court of appeal reached a contrary conclusion from that reached by the trial court, finding Bowers negligent, saying:

"One driving an automobile is under the legal duty of being unceasingly vigilant and at all times attentive of what the conditions of traffic may be so as to permit him to act in the case of danger presenting itself. It would seem that Ryan, who was riding on the rear seat, was more observant than was Bowers, who operated the automobile, and if Ryan from his position on the rear seat was able to see the Ford V-8 truck from a distance of 49 feet, surely Bowers, had he been attentive, could also have sighted the truck in time to take measures toward averting the collision."

We are in accord with the principle announced by the court of appeal which exacts from the operator of an automobile vigilance and attentiveness. This general rule of law, however, does not control or apply to the particular circumstances involved in this suit. The court of appeal obviously placed great reliance and weight on the testimony of Ryan that he saw the truck in motion moving out into North Carrollton Avenue immediately before the collision while Bowers' car was about an estimated 49 feet from the truck.

The record discloses that in an effort to estimate the distance between the two vehicles when he first saw the truck Ryan designated a similar distance in the trial court room, by which designation the distance so estimated was fixed by the trial judge to be about 49 feet. His testimony reveals that upon his realizing the danger of the presence of the truck he called out a warning and that almost simultaneously with his call the collision occurred.

It is to be noted that the testimony of Ryan was received by the trial court at a time remote from the date of the accident, being about 14 months later, and his estimate that the vehicles were 49 feet apart when he first noticed the truck is apparently an exceedingly rough estimate on his part in view of his comment that he could not tell definitely whether the car driven by Bowers was in Bienville Street or whether it was still approaching and had not intersected Bienville Street at the time he saw the truck. Further evidence of the uncertainty of his observation is the fact that in a prior trial had in connection with this accident in the Traffic Court, Ryan testified and by his designation and description of the distance between the vehicles the Traffic Court judge fixed his estimate to be about 31 feet. In order to explain Ryan's reference to the Traffic Court trial, his attorney stated to the trial court: "He is referring to his testimony in the Traffic

Court case. When he saw this truck and holloed, he was about 31 feet away when he saw (the) truck and he holloed to the driver, Bowers."

The record establishes with certainty that each of the roadways of Bienville Street is 15 feet wide, separated by a three-foot neutral ground; and therefore to traverse the width of Bienville Street a motorist must travel a distance of 33 feet.

Our appreciation of these salient facts is that if Ryan had observed the Evans truck moving out into North Carrollton Avenue when a distance of 49 feet away, at that moment Bowers' vehicle would not have reached the intersecting Bienville Street; and we believe under these circumstances the truck would have either cleared the roadway, or would have been in plain front view of Bowers and thus afforded him an opportunity to attempt to avert the accident. Otherwise, if the truck had been in plain view of Bowers and had not cleared the roadway of North Carrollton Avenue, it would probably have been struck broadside by the automobile. Further, if Ryan had observed the truck at a distance of 31 feet, that observation would have been made at the time or after Bowers' vehicle entered the intersecting Bienville Street; and while it is shown that Bowers

was proceeding at a lawful rate of 25 to 30 miles per hour, under such circumstances he could not have brought his car to a stop within less than 44 feet [1] and consequently could not have avoided being struck amidships by the truck which, as was conclusively established, had negligently entered the intersection.

The evidence overwhelmingly preponderates in favor of Bowers to the effect that he entered the intersection at a lawful and reasonable speed; that he looked to his left and then to his right as he entered the intersection and saw no vehicle in view; that he knew that there was a stop sign on Bienville Street requiring vehicles to stop before entering or attempting to cross North Carrollton Avenue and, therefore, had the legal right to assume that any vehicle which approached that intersection while he, Bowers, was travelling on North Carrollton Avenue at or reasonably near the intersecting Bienville Street would comply with the "Stop" sign, come to a full stop and remain in that safe position and yield to right-of-way traffic on North Carrollton Avenue before attempting to enter or cross that roadway.

We are impressed with the high degree of care Bowers exercised in operating his car and do conclude that there was no act

1. Established by the Research Laboratories Division of the Technical Data Department of General Motors—reaction time is ¾ths of a second, during which time the car travels 33 feet.

which could or should have been performed in order to avoid this accident.

In the case of Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, we held as follows:

"The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe, the law. See Termini v. Aetna Life Ins. Co., La.App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., Sec. 1032, pp. 216, 217."

It appears that as a result of the collision the automobile was toppled over on its left side, resting upon the northeast corner of the neutral ground of North Carrollton Avenue. This physical fact strongly persuades the conclusion that Bowers had not only legally pre-empted the intersection, but had almost completed full passage of the intersecting lanes of Bienville Street.

In gauging the fault which plaintiffs seek to attribute to Bowers who was then operating his car in obedience to positive law we are not prepared to hold him guilty of any dereliction. Were he to be found amenable to fault, surmises giving rise thereto would be unsubstantial and surely not a direct factor, that, without it, the accident would not have happened.

We deem the negligence of the truck driver Leslie Evans to be the sole and only cause of this accident.

Accordingly, for the reasons assigned, the judgment of the Court of Appeal, Parish of Orleans, is reversed and set aside and it is ordered that the judgment of the district court be reinstated and made the judgment of this Court; plaintiff to pay all costs of this appeal.