128 So.2d 918 (1961)
Robert H. NOONAN et ux., Plaintiffs-Appellants,
v.
LONDON GUARANTEE AND ACCIDENT COMPANY, Ltd., Defendant-Appellee.
No. 9467.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1961.
Rehearing Denied May 10, 1961.
Bodenheimer, Looney & Richie, Shreveport, for appellant.
Wilkinson, Lewis, Madison & Woods, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Plaintiffs have appealed from a judgment of the lower court rejecting their claim for personal injuries and certain special damages arising out of an intersectional collision between the vehicles being operated by Mrs. Noonan and defendant's insured, Dr. Charles Legler. The accident occurred at the intersection of Forrest and Wheless Streets in Shreveport, Louisiana, on January 7, 1959, which the record shows was a clear and dry day.
*919 Mrs. Noonan was driving the community automobile in an easterly direction on Forrest Street and Dr. Legler was travelling in a northerly direction on Wheless. It was the testimony of Mrs. Noonan that she slowed as she neared the intersection, looked to the right and left but saw no approaching traffic and proceeded to negotiate the intersection. She stated she did not see the other automobile until she had reached the center of the intersection and, upon such observation, she attempted to escape from danger by acceleration but was unable to do so.
Dr. Legler testified he was looking to his left, the opposite direction from which Mrs. Noonan was approaching, as he neared the intersection. He said he did not see the plaintiff's vehicle until he was about ten feet from the crossing, by which time she was also about ten feet from the intersecting street. He immediately braked his vehicle and pulled to the left but was unable to avoid the accident.
The evidence shows that Forrest Street is twenty-six feet, five inches and Wheless Street thirty feet, two inches wide at the intersection. According to the police report, the impact occurred almost exactly in the center of the intersection; the Legler car left skid marks measuring twenty-two feet and eleven inches before the collision, and the Noonan vehicle travelled out of control approximately twenty-nine feet after being struck. The point of impact was at the driver's door of plaintiff's car.
This intersection is a neutral one as it was not controlled by signs, semaphore signals or ordinance. As plaintiff's automobile was approaching from Legler's right, a right of way is claimed under LSA-R.S. 32:237, subd. A, which is as follows:
"When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. * * *"
There is practically no dispute as to the facts in this case which were correctly found by the trial court to be substantially as stated above. Therefore, we have before us on appeal for determination, purely a question of law which may be stated thusly: Where two motorists approach an intersection at approximately the same time and the one approaching from the right looks in both directions and slowly proceeds to enter same, and is struck by a motorist from her left who was travelling at a moderate rate of speed, but did not slow down or see the other vehicle because of his failure to look, is the motorist approaching from the right guilty of contributory negligence for failure to observe the motorist on her left, who obviously was within her vision, or is she free from negligence under the statute which accords her the right of way, even though she had no knowledge of such right of way and obviously could not have relied on such when entering the intersection?
In developing this question, we shall proceed from the known to the unknown in our jurisprudence. We say this because in certain areas of the broad field of intersectional collisions our Supreme Court has laid down some rather definite rules, while in others there seems to remain some doubt. One such rule which seems to be firmly established by our Supreme Court is that when an intersection is controlled by an electric semaphore light, the motorist on the favored street is entitled to indulge in the assumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection and it is not essential for such driver to look for violations from traffic on the side streets because that traffic is required to stop and remain stationary until the semaphore light changes. Youngblood v. Robison, 1960, 239 La. 338, 118 So.2d 431, and numerous cases cited therein.
The law of this state is also well settled that a motorist who is proceeding on a *920 right of way street, upon approaching an intersection where traffic is required to stop, and is warned of such by means of a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a stop before entering the intersection and such motorist can indulge in this assumption until he sees that the other car is not going to observe the law. Koob v. Cooperative Cab Co., 1948, 213 La. 903, 35 So.2d 849; Henderson v. Central Mutual Insurance Co., 1959, 238 La. 250, 115 So.2d 339, and numerous other citations in both of these cases.
In the case where a motorist has the right of way because of an electric semaphore light, one of the reasons why he is not required to look extensively either to his right or his left is because he necessarily must keep his vision on the traffic light. In the case where there is a stop sign on the inferior street, and where the motorist on the favored street has knowledge of such sign, a less degree of care in observing to the right and left is exacted from such driver than from the one on the inferior street because the former has a right under those circumstances to assume that the motorist on the less favored street will observe the law as exhibited in front of him by means of the stop sign.
We now pass to that portion of our jurisprudence which has not been made so certain by any decisions from our Supreme Court. We refer to the question now before us wherein we do not have either a semaphore light or a stop sign, or even knowledge on the part of the motorist on the favored street that the law affords her a right of way. In other words, the plaintiff in this case would clearly be free of any contributory negligence if the right of way had been granted by means of a light or a stop sign, but is she granted such a superior right by the operation of the law under the state statute which gives her such a right of way merely because she was approaching the intersection from the right? Even though we have not been cited to any Supreme Court cases directly on point, we feel the case of Allen v. State Farm Mutual Automobile Insurance Company, La.App. 2 Cir., 1960, 120 So.2d 372, 375, is controlling. In that case the facts were almost identical to those now under consideration except that the accident occurred at the intersection of two highways rather than city streets. In that case we held as follows:
"The general rule is that motorists on rights-of-way streets have a right to assume that traffic approaching the intersection from less-favored streets will observe the law and yield the right of way to traffic on such favored streets, and that such motorists can indulge in this assumption until they see, or should see, that the other motorist has not observed, or is not going to observe, the law. * * *
"This principle has application at blind corners, or blind intersections, regardless of whether the movement of traffic is controlled or governed by signal lights, stop signs, or the statutory rule as to directional right of way." (See numerous citations listed therein)
The same general rule was applied in an earlier case of Commercial Credit Corp. v. Serpas, La.App. 1 Cir., 1957, 94 So.2d 83, wherein the only right of way involved was granted by statute.
While writs were not applied for in either of the two cases mentioned directly above, we feel they express sound views and are in conformity with the trend of the Supreme Court as expressed by Justice McCaleb when he stated in his concurring opinion in the case of Randall v. Baton Rouge Bus Co., 1960, 240 La. 527, 124 So. 2d 535, 543:
"Under all of our latest cases, we have given increasing recognition to the right of the motorist travelling on right-of-way streets to indulge in the assumption that traffic approaching intersections from less favored streets will observe the law and it is only in *921 exceptional circumstances (which I do not find present in this case), where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict." (See citations listed thereunder)
Applying the facts of this case to the law as outlined above, we have no difficulty in agreeing with the trial court that the defendant's insured, Dr. Legler, was negligent in entering the intersection without stopping or looking to his right when he was travelling on the inferior street; and that such negligence was the proximate cause of the accident. On the other hand, we do not find the plaintiff, Mrs. Noonan, guilty of any negligence which contributed to this accident by her failure to observe the approach of Dr. Legler's vehicle until it was too late to avoid the collision. Having the right of way, she could have only been guilty of negligence which would have been a proximate cause of the accident by a substantial dereliction of her duty, which we do not find from the facts of this case. The uncontradicted facts show that she brought her vehicle to an almost complete stop and glanced to her left and right before entering the intersection, and we do not feel the law exacted from her any greater degree of observation under the circumstances.
The plaintiff, Robert H. Noonan, has established his claim for the following items which are due to the community as a result of the accident:

1. Property damage to the
 automobile not covered by
 insurance $ 50.00
2. Amount paid to Dr. E. B.
 Flake for treatment of
 Mrs. Noonan 43.00
3. Amount paid Dr. Morris
 for treatment of Mrs.
 Noonan 6.00

The testimony also revealed that Mrs. Noonan was a music teacher in the public schools of Bossier Parish which work caused her to visit three of the schools located in different parts of the parish. In order to carry on this work, it was necessary for her to use the automobile involved in the collision to get to and from work. As a result of the collision, she had to rent another car for twenty days at $5 per day, which the community was obligated to pay, and for which Mr. Noonan is entitled to recover the sum of $100.
Mrs. Noonan suffered personal injuries as a result of the accident which were purely temporary in nature, but did cause her some pain, suffering and discomfort, for which she is entitled to be recompensed. The medical testimony consisted of the written reports of Drs. M. K. Morris and E. B. Flake which were admitted in evidence by stipulation of counsel. These reports show she was nervous and upset as a result of the accident and had contusions behind the right ear, on the left knee and right shoulder. Mrs. Noonan was given sedatives on the day of the accident, and returned to the doctor on the following day complaining of pain in the lumbro-sacral area, headaches and nervousness. Her injuries were diagnosed as multiple contusions and a mild lumbar sprain. She was treated with diathermy for approximately a week and was discharged from all treatment about twelve days after the accident. The record convinces us that Mrs. Noonan fortunately did not suffer any residuals as a result of the accident, and that her pain and suffering was of a very minor nature, for which we think she is entitled to a judgment in the sum of $750.
For the reasons stated, the judgment of the lower court is reversed and set aside, and judgment is now rendered in favor of the plaintiff, Robert H. Noonan, and against the defendant, London Guarantee and Accident Company, Limited, in the sum of $199, and in favor of the plaintiff, Beatrice D. Noonan, against said defendant in the sum of $750, with legal interest *922 thereon from the date of judicial demand until paid on both such awards, together with all costs of these proceedings, including those of this appeal.
Reversed and rendered.