MILLER, J. pro tem.
This suit for damages arose out of an automobile accident which occurred at about 1:30 a. m. on December 29, 1958 at the intersection of Hanks Drive and Airline Highway in the City of Baton Rouge, Louisiana. The accident involved a 1952 Dodge tractor-trailer combination with an overall length of 49 feet and weight of 49,000 pounds, which was owned and operated by defendant, Thomas B. Causey, and a 1953 Chevrolet Fordor Sedan automobile *694 owned by plaintiff, Rayford L. Wells, and driven by his 19 year old son, Harold. Rayford L. Wells, brought this suit on his son’s behalf to recover damages for his son’s pain, suffering and disability, and on his own behalf to recover medical expenses which he incurred as a result of the minor’s injuries as well as the sum of $50.00 for that portion of the property damage to his automobile which was not covered by his collision insurance. Defendant, Causey, answered the suit by filing a general denial without alleging contributory negligence, but reconvened claiming indemnification for property damage sustained by his truck and loss of earnings. The trial judge rendered and signed judgment in favor of plaintiff, Rayford L. Wells, individually for the sum of $526.20 and for the use and benefit of his minor son, Harold Wells, in the amount of $2,500.00. Defendants reconventional demand was rejected. After this judgment was rendered on June 23, 1960 and signed on June 24, 1960, defendant filed (on June 27, 1960) an exception of no cause of action and an application for a rehearing which was argued before the trial court and refused on July 11, 1960. On March 29, 1961, defendant moved for a devolutive appeal and plaintiff has answered the appeal seeking an increase in the award of damages.
Defendant-appellant here contends that by filing the exception of no cause of action and the application for rehearing as explained hereinabove, he is now able to urge the defense of contributory negligence. Defendant sets forth as the specification of alleged errors committed by the trial court that:
“A. The Trial Court erred in failing to find the plaintiff-appellee, guilty of negligence which would either bar his recovery or permit Causey to recover.
“B. The Trial Court erred in finding that the defendant-appellant, was guilty of any negligence whatsoever which barred his reconventional demand.”
The intersection of Hanks Drive and Airline Highway is depicted in several aerial and ground photographs which form a part of the record. These photographs make it abundantly clear that Hanks Drive does not intersect Airline Drive at right angles. Although we do not have a survey of the intersection, the several aerial photographs give us the impression that if Hanks Drive is laid out due east (90°) and west (270°), then Airline Drive traverses this intersection in the direction of approximately North-northwest (337°) and South-southeast (157°). As seen from these photographs, Airline Highway is a major traffic artery consisting of two traffic lanes running in each direction and a neutral ground separating the opposing traffic lanes. The parties are agreed that each pair of traffic lanes measures 22 feet in width and that the neutral ground is fourteen feet wide. The intersection was unlighted. The weather was clear and the road was dry. Traffic on Airline Highway had a posted speed limit of 50 miles per hour.
Hanks Drive is a two lane road with blacktop surfacing of a width of 18 feet and in addition it has shoulders on each side of the blacktop. The photographs as well as the physical measurements of the two roads make it obvious that Airline Highway is the superior and Hanks Drive the inferior road. Defendant, himself, in his testimony has acknowledged that Airline Highway is the favored street requiring traffic entering it from Hanks Drive to stop and yield the right-of-way to traffic on Airline Highway.
There is no conflict in the evidence concerning the physical facts found after the accident. This may be due to the fact that photographs were made at the scene before Mr. Well’s Chevrolet was moved. These photographs showed dusty tire prints on the Airline Highway which everyone agreed must have been laid down by the defendant’s truck immediately before, during and after the accident. Also shown was the position where the Chevrolet came to rest after the accident. It was generally agreed *695 that this vehicle had not moved more than one foot after the collision.
Causey approached the intersection from the east driving west on Hanks Drive and came to a complete stop with his heavily loaded truck just prior to entering the intersection, and looked to the left to see if there was any traffic. To do this he had to look instead of the usual 90 degrees to the left, approximately 113° to the left. Causey testified that while he was stopped and looking to the left he saw traffic either stopped at the intersection of Evangeline and Airline Highway, which intersection is controlled by an electric semaphore signal, or some distance farther hack at the intersection. Since this intersection was at least 1000 feet away, he presumed that he had time to turn right the approximately 67° necessary to get on the Airline Highway heading North-northwest. Causey never looked back to check on the approaching traffic and was of the belief that he was traveling on the Airline Highway when his truck was struck by the plaintiff’s automobile. It is defendant-appellant’s view that this case presents a rear end collision rather than an intersectional collision. Causey estimated his speed at the time of the collision at approximately seven miles per hour.
Harold Wells, the driver of the plaintiff’s Chevrolet, was severely injured in the accident, and as a result suffered retrograde amnesia. This finding is not questioned by defendant for indeed, all of the physicians agree on this diagnosis. The only thing that Harold can recall prior to the accident was slowing for the red light at the intersection of Airline Highway and Evangeline.
Ray Clark, a disinterested witness, was plaintiff’s principal witness. Mr. Clark was an eye witness to the accident and had been driving his car either alongside or slightly behind Wells from the Florida Street interchange at Airline Highway for approximately three miles to the site of the accident. From the interchange to Evangeline Street, Clark was driving in the inside or left lane and Wells in the outside or right lane and both were proceeding at approximately 40 to 45 miles per hour. Clark related that as they approached the Evangeline Street intersection the traffic light was red, so they reduced their speed. They did not stop because when they had slowed to approximately 30 miles per hour, the signal changed to green and they resumed their former speed. From the Evangeline Street intersection, Wells was some 25 to 30 feet ahead of Clark. Clark testified that he did not see the tractor-trailer until an instant before the collision, and then only for the reason that its left rear light then came into view. There is no evidence that Wells applied his brakes. Assuming that Wells saw the trailer tail light at the same time that Clark saw it, it appears improbable that there was sufficient time for Wells to apply his brakes. Clark testified that the only light that he saw on the Causey vehicle prior to the accident was the left tail light. However, approximately one hour after the accident, Clark and Causey went back to the truck to check all of the lights and found that all lights were in working condition. This included the left tail light as well as both headlights and the side lights. According to the evidence, these side lights are not powerful lights and direct their light primarily to the front and rear of the truck rather than to the side of the truck.
The physical findings shown in the photographs together with the testimony of the investigating officers is impressive. This shows without question that the extreme right front of the Chevrolet ran into the extreme left rear of Causey’s trailer which was loaded with bricks. This impact occurred four feet west of the east edge of the pavement for the Airline Highway, and 13 feet north of a line projected west along the north edge of the blacktop on Hanks Drive. Because of the wide turning area provided for vehicles turning North-northwest on Airline Highway from Hanks Drive, it is our opinion that this point of impact was within the intersection. It is also clear that at the time of the impact, *696 Causey’s tractor was on the Airline Highway, but his trailer was at least half off the highway and still in the process of completing the turn on the highway so that it could trail the tractor. The first lighting on Causey’s truck and trailer which could be expected to give any warning of the presence of the truck turning on the highway was the left rear tail light and this only came into view an instant before the collision.
We agree with the findings of the trial judge that Causey was negligent in failing to make certain that he could enter the Airline Highway without endangering other motorists. Since the facts make it clear that Wells was free from negligence, we see no need to discuss the question of whether or not defendant has properly raised the issue of contributory negligence.
Under our view of the facts set forth above, the authorities cited by defendant are not in point. As we observed in the case of Guarisco v. Swindle, La.App., 132 So.2d 635:
“ * * * our views are aptly expressed in the concurring opinion of Justice McCaleb in Randall v. Baton Rouge Bus Company, Inc., et al., supra, in which he stated, [240 La. 527] 124 So.2d [535] at page 543:
‘A consideration of the facts of this case has not convinced me that the bus operator should or could reasonably have anticipated that the driver of the Randall car would not respect the superior right-of-way of the bus by bringing the car to a stop before it preempted the intersection. Under all of our latest cases, we have given increasing recognition to the right of the motorist travelling on right-of-way streets to indulge in the assumption that traffic approaching intersections from less favored streets will observe the law and it is only in exceptional circumstances (which I do not find present in this case), where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict. See Kientz v. Charles. Dennery, Inc., 209 La. 144, 24 So.2d 292; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831,. 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431.’”
The only question raised as to the damages awarded by the trial judge was that of the plaintiff seeking to have the award of $2,500.00 for the injuries, pain and suffering of Harold Wells increased to the sum of $7,500.00. Dr. Lorio testified' that Harold Wells sustained a brain concussion and contusion and possibly other injuries to the central nervous system evidenced by a convulsive state and a coma of five hours’ duration following his admission to the hospital. He also had a deep laceration of the right frontal parietal scalp extending to the cranium bone and avulsion or “flapping back” of that part of the scalp. The scar left by this laceration will be permanent, although not visible unless and until Harold’s hair line recedes far enough to reveal it. Several other lacerations, abrasions and contusions were noted by Dr. Lorio. The severity of the injuries was further apparent from the fact that while in the hospital, Harold developed oliguira (a discoloration of his urine which cleared up in a day and one-half) as a result of what Dr. Lorio termed a “crush syndrome.” Harold made an unbelievably quick recovery from these serious injuries and was discharged from the hospital in three days, and returned to his work about two weeks after the accident. Dr. Lorio saw Harold as an office case until July 10, 1959, at which time he discharged him as completely recovered.
*697 In addition to the injuries for which Harold was treated by Dr. Lorio, Harold was treated by Dr. C. Fred Melcher, D.D.S. ■of Baton Rouge, Louisiana. Although Dr. Melcher did not testify, his report, which is in evidence, indicates that three teeth were injured as a result of this accident. This report indicates that three veneer crowns and one dowel crown would be needed to ■repair Harold’s teeth.
There have been no cases cited to us concerning the proper damages to be awarded in this case. Considering the seriousness of the injuries, but the rapid recovery experienced by Harold Wells we find no manifest error in the judgment appealed from and the same is hereby affirmed.