221 So.2d 297 (1969)
Oscar M. BALLARON, Jr., Individually and as Head and Master of the Community between himself and Mary C. Ballaron, his wife
v.
John O. ROTH, Louis H. Shaffer and Government Employees Insurance Company.
John ROTH and Russell Gass
v.
Oscar M. BALLARON, Jr.
Mary C. BALLARON
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY.
Nos. 3367-3369.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1969.
*298 Joseph B. Stahl, New Orleans, for appellants.
Schroeder, Kuntz & Miranne, Herman M. Schroeder, New Orleans, for appellees.
Before REGAN, SAMUEL and HALL, JJ.
SAMUEL, Judge.
These three suits for personal injuries and property damages arise out of the same intersectional collision between a taxicab and a pickup truck. They were consolidated for trial in the district court and for argument here. Plaintiff in suit No. 3367 of our docket is Oscar M. Ballaron, Jr., the driver of the taxicab; he appears individually and as head and master of the community between himself and Mary C. Ballaron, his wife, who was a passenger in the taxicab; defendants in that suit are John Roth (driver of the truck), Louis H. Shaffer (alleged owner of the truck), and Government Employees Insurance Company (alleged automobile public liability insurer of the other two defendants). The plaintiffs in suit No. 3368 are Russell Gass, a passenger in the truck, and John Roth, its driver; Oscar M. Ballaron, Jr., driver of the taxicab, is the only defendant. In suit No. 3369 Mary C. Ballaron is the plaintiff and the defendants are the same three named as defendants in suit No. 3367. Prior to trial two of the three defendants in suits Nos. 3367 and 3369, Schaffer and Government Employees, were dismissed with prejuice on motions of the plaintiffs in those suits because plaintiffs had verified they were not owner and insurer of the truck as the petitions originally had alleged. Thus the sole remaining defendant in the suits filed by Mr. and Mrs. Ballaron is John Roth, driver of the pickup truck.
After trial there was judgment: (1) in suits Nos. 3367 and 3369, in which Mr. and Mrs. Ballaron are the plaintiffs, in favor of the remaining defendant, Roth, and against plaintiffs, dismissing those suits; and (2) in suit No. 3368 in favor of plaintiffs, Roth and Gass, and against the defendant, Mr. Ballaron, in the sums of $1,000 for pain and suffering, $265 for medical expenses and $232.66 for property damages to Roth and $200 for pain and suffering to Gass.
Mr. and Mrs. Ballaron have appealed from all three judgments. In this court they contend the trial court erred in concluding: (1) the accident resulted from the negligence of the taxicab driver, Mr. Ballaron; and (2) there was no negligence on the part of the driver of the pickup truck. In the suit in which he is the defendant, No. 3368, Mr. Ballaron further and alternatively contends the $1,000 award to Roth for personal injuries is excessive. Neither Roth nor Gass have appealed or answered these appeals.
The accident occurred at approximately 8:30 p. m. on November 30, 1966, a clear night, in the intersection of South Cortez and Cleveland Streets in the City of New Orlean. South Cortez was the superior roadway of the two and a sign on Cleveland required traffic on that street to stop before entering the intersection. Both were one-way streets, South Cortez for traffic bound uptown (generally southwesterly) and Cleveland for traffic proceeding towards the lake (generally northwesterly). The pickup truck driven by Roth, with Gass as a passenger sitting to Roth's right, was traveling on South Cortez at a speed of between 15 and 20 miles per hour. The taxicab (a vehicle owned by Mr. Ballaron but not then being operated as a taxicab) was being driven by Mr. Ballaron on *299 Cleveland; his wife was sitting in the front seat next to the driver. The impact occurred after the taxicab had crossed slightly more than one-half of the intersection. The front of the pickup truck, especially the left front, struck the right front door of the taxicab. The truck was without lights after the collision.
The record contains the testimony of five eye witnesses to the accident. Four of these are litigants: Roth, Gass and Mr. and Mrs. Ballaron. The fifth such witness, called by Roth and Gass, was Ronnie St. Martin, a native of Honduras attending high school in New Orleans who, at the time of the accident, was 16 years of age and lived on South Cortez near the intersection involved.
Roth and Gass testified the truck was proceeding on South Cortez with all of its lights burning. Neither saw the taxicab until just before the impact occurred; Gass said he first saw that vehicle when it was about three car lengths away approaching from his left, while Roth testified he first saw the cab when it was about one truck length away. According to both, Roth immediately applied his brakes but was unable to avoid the collision.
Mr. and Mrs. Ballaron testified that upon reaching the intersection he stopped the taxicab in obedience to the stop sign. Both then looked to their right for traffic on South Cortez. Neither saw headlights approaching from that direction and Mr. Ballaron then shifted to first gear and proceeded to cross at a speed of about 5 to 10 miles per hour. Both of these witnesses felt the truck had been traveling without headlights or cab lights. Neither saw the truck before the collision took place.
Ronnie St. Martin testified as follows: He was walking to his home, and had just crossed South Cortez, when he turned and saw the accident happen. After turning he first saw the headlights of the truck, then the cab (which did not stop for the stop sign), and then the collision. He was certain the truck's headlights were on before the collision occurred and that the cab did not stop for the sign.
Relative to the facts of the accident only four other testified. The were: the police officer who investigated the accident, who was called by Roth and Gass; two employees of the cab company with which Mr. Ballaron was associated who had investigated the accident for that company; and a professional photographer, who identified pictures of the intersection taken in daylight on a date subsequent to the accident; the latter three witnesses were called by Mr. and Mrs. Ballaron. We note the testimony of the police officer corroborates some of the testimony given by Roth and Gass, particularly in that the truck had left 10 feet of skid marks and, in connection with the argued intoxication on the part of Roth (which we will discuss later), in his finding that neither driver appeared to have been drinking.
As explained in his reasons for judgment, the trial judge found that the truck lights were on at the time of the accident and that the taxicab had failed to stop for the stop sign, or that (arguendo) even if it did stop for the sign, it entered the intersection only a few feet ahead of the truck when there was insufficient time for the taxicab to clear the intersection or for the truck to avoid the collision. He also found Roth could not have avoided the accident, that his application of the brakes was as much as he could do under the circumstances. He concluded Roth was without negligence and that the accident had occurred solely as a result of the negligence of the taxicab driver.
Other than some complaints relative to minor discrepancies in the testimony of Roth and Gass, which we find unnecessary to discuss, counsel for Mr. and Mrs. Ballaron argues: the pickup truck was being driven without lights; both Roth and Gass were intoxicated; and there is insufficient showing that the witness, Ronnie St. Martin, actually was present at the scene of the accident.
*300 There is little question but that the truck was being driven with lights. Three witnesses, Roth, Gass and St. Martin testified to that fact, the trial court accepted that testimony, and there is no affirmative evidence to the contrary. The only other evidence on the subject is the fact that the lights were inoperative after the accident and the testimony of Mr. and Mrs. Ballaron who said only that they did not see the truck or its lights prior to the collision. All of the pertinent evidence in the record establishes the lights could not function after the accident because the truck's battery was damaged in the collision.
The only evidence indicating intoxication on the part of Roth and Gass is contained in the testimony of the two employees who investigated the accident for the taxicab company. One of them testified that both Roth and Gass appeared to be intoxicated, the other said he thought Gass looked like he had been drinking, although he could not say the man was drunk, and that he could not testify if Roth had been drinking. Neither Mr. nor Mrs. Ballaron testified that either of the two men appeared to have been drinking, nor did any other witness. Roth testified he did not drink, and couldn't because of ulcer surgery, while Gass said he had drunk only one can of beer early in the evening. Roth was rendered unconscious for some time as a result of the accident and Gass was stunned by the impact. The police officer who investigated the accident stated he checked both drivers and concluded, as we have mentioned, there was no indication that either had been drinking.
The argument relative to doubt about whether the witness Ronnie St. Martin actually was present at the scene of the accident is based on the fact that the investigating police officer did not obtain his name as a witness although he inquired as to whether or not there were any witnesses to the accident among the people who were on the scene when he arrived. The simple answer to this argument is that Mrs. Ballaron herself testified she saw Ronnie St. Martin at the scene at the time the accident took place; she saw the young man when he crossed South Cortez Street and when he was walking on the South Cortez sidewalk just before the impact occurred.
No rule of our jurisprudence is more firmly established than that on questions of fact involving the credibility of witnesses the trial judge who heard and saw those witnesses will be reversed only for manifest error. We find no such error here. To the contrary, we are in agreement with the trial judge's findings of fact.
We also agree with his conclusions as to the law applicable to those facts. A motorist on a right of way street has the right to assume that traffic approaching an intersection from less favored streets will observe the law and not violate the former's right of way. Youngblood v. Robinson, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1; Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So. 2d 919; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Ryan v. Allstate Insurance Company of Chicago, 232 La. 831, 95 So.2d 328; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery, 209 La. 144, 24 So.2d 292. And to merely stop for a stop sign is to perform only a part of the required duty; such action must be followed by a careful observation of traffic conditions and the motorist controlled by the stop sign must yield the right of way to all vehicles lawfully proceeding on the favored roadway. Landry v. Yarbrough, La.App., 199 So.2d 377; Pate v. State Farm Mutual Automobile Insurance Co., La.App., 147 So.2d 766; Arline v. Alexander, La. App., 2 So.2d 710.
We now address ourselves to appellant's contention that the award to Roth of $1,000 for pain and suffering is excessive. The record reveals that Roth was rendered unconscious by the accident and, *301 while still in a somewhat stunned state, was brought to Charity Hospital in New Orleans. He was discharged the same evening. He returned to the hospital on one additional occasion because he continued to suffer from his injuries. Seven days after the date of the accident he consulted Dr. Blaise Salitich.
That doctor testified: He took Roth's history, examined him and had x-rays made of the cervical spine. The x-rays were essentially negative. Roth had a predominantly soft tissue injury. There was a moderate degree of tenderness over the posterior and lateral cervical spine bilaterally, a significant amount of painful tightness and difficulty moving his head and neck in any direction, and tenderness over the suboccipital area where the ligaments and muscle attachments of the neck attach to the base of the skull. Roth presented a moderate lumbosacral syndrome. Muscle spasm was noted through the paravertebral musculature at the lumbosacral level bilaterally.
In the doctor's opinion Roth had sustained a crushing-type injury to his chest involving tearing of the right, mid and lower costochondral articulations, a moderate whiplash-type injury involving the para-articular and capsular ligaments, and a moderate whiplash-type low back injury involving ligamentous and musculofascial structures, lumbosacral region. The doctor advised him to restrict his physical activities and return for short wave diathermy treatment for the neck and low back. A muscle relaxant, analgesic pain killing drug and a counter irritant were prescribed. He advised Roth to wear a corset. Treatments were instituted December 6, 1966 and continued until December 12, 1967 for a total of twenty treatments.
The only question presented by the contention now under discussion is whether the award of $1,000 to Roth is so excessive as to constitute an abuse of the "much discretion" in assessing damages for personal injuries given the trial judge and jury by LSA-C.C. Art. 1934(3). See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Luquette v. Bouillion, La.App., 184 So.2d 766. While the trial judge stated in his reasons for judgment that he was not impressed with the severity of Roth's injuries, apparently being under the impression they had been exaggerated, conclusions with which we agree, we are satisfied that the award in the amount of only $1,000 clearly is not sufficiently excessive so as to constitute an abuse of the trial judge's discretion.
For the reasons assigned, the judgments appealed from are affirmed.
Affirmed.