AYRES, Judge.
Plaintiff, Mrs. Cynthia Sue Arnold, seeks by this action in tort to recover damages for personal injuries allegedly sustained in an automobile collision of April 18, 1967, at the intersection of Line Avenue and Wilkinson Street in Shreveport. Involved in the collision were a Ford Mustang owned and driven by Jerry Don Arnold, plaintiff’s husband, with whom she was riding as a guest passenger, and a Ford sedan driven by Mrs. Daphne Goens. Made a defendant in addition to Mrs. Goens and her insurer, Liberty Mutual Insurance Company, was Members Mutual Insurance Company, insurer of the Arnold vehicle.
Before trial, plaintiff’s suit against Mrs. Goens and her insurer was settled, but, under a reservation of rights, the action was continued to be prosecuted against her husband’s insurer. Under a finding, following trial, that Jerry Don Arnold was free from fault in the occurrence of the accident and that Mrs. Goens’ negligence was the cause thereof, plaintiff’s demands were rejected as to this remaining defendant, Members Mutual Insurance Company. From this judgment she appealed.
*585 The issues presented for determination by this court are questions of fact and relate primarily to the question of Arnold’s fault. Negligence charged to Arnold includes a failure to keep a proper lookout, to keep his vehicle under control, or to ascertain that the intersection was clear of traffic before attempting to enter it, as well as a charge of excessive speed. Since Mrs. Goens was found to have been at fault, it appears appropriate to record here the charges of negligence directed to her: (1) in running a red light, (2) in failing to keep a proper lookout or to see the Arnold vehicle, and (3) in failing to maintain control of her car.
The trial court, in reviewing the testimony of the witnesses in a written opinion, concluded that the responsibility for this accident rested solely upon Mrs. Goens. This fault related to the manner in which Mrs. Goens approached and entered the intersection. The court found that Mrs. Goens, from a distance of some 90 feet from the intersection, saw the light changing from green to red, whereupon she accelerated her speed and endeavored to beat the light and the traffic on Line Avenue. Our review of the record leads us to a similar conclusion.
However, it may be first pointed out that a terraced lot a few feet above the street level is located at the northeast corner of the intersection. This elevated lot and the large building and trees thereon obscure to some appreciable extent the view of traffic approaching the intersection both from the north on Line Avenue and from the east on Wilkinson Street. This tends to explain Mrs. Goens’ failure to see the Arnold car and Arnold, the Goens’ car sooner than they did. Arnold was proceeding in a southerly direction on Line Avenue; Mrs. Goens, westerly on Wilkinson Street.
There is a conflict in the testimony with respect to the question of who ran the “red” light; Mrs. Goens denied that she did and testified that she was under the light when it changed to “red.” She also denied making statements at the scene of the accident to the effect that she did run the “red” light and that the accident was caused by her negligence. Her testimony in this respect is contradicted by Arnold and Lloyd B. Hawkins, Jr., a taxi driver who witnessed the accident. Arnold testified he had the “green,” or favorable, light. Hawkins, who was parked on the north side of Wilkinson Street facing west toward Line Avenue, testified as to Mrs. Goens’ passing him and that she entered the intersection on a “red” light. The trial court believed this testimony. We find no basis in the record for disagreement with this conclusion.
Though we conclude from the testimony neither Arnold nor Mrs. Goens was driving at an unlawful or excessive speed, both admitted they did not see the other’s car until the moment of impact. Inasmuch as Mrs. Goens had an unfavorable signal, she was negligent in entering the intersection. But as to Arnold, who had a favorable traffic signal, a different conclusion must be drawn from his actions. For instance, one who operates his vehicle in accordance with positive law may assume that the law will be obeyed and respected by others.
Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 434-435 (1960).
Thus, in Youngblood, a case factually similar to that of the instant case, the court made these observations with respect to the jurisprudence covering situations such as this. There it was stated:
“ * * * He was not obliged * * * to turn his head in the direction of traffic approaching from his left or right, or from both left and right, to ascertain whether someone might violate the law by running the crossing on a red light. On the contrary, he had the right, under our jurisprudence, to assume that the law would be respected.
*586 “In Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, where a stop sign was involved, the Court said:
“ ‘ * * * The motorist on the right-of-way street, ivith knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the lazo and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.’
“This rule has been cited and followed on several occasions, notably in Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222 and Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339.
“The above cited jurisprudence governing cases where stop signs were involved applies, a fortiori, to intersections controlled by electric semaphore lights. When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the assumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
“This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.
“In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, a case very similar to this one, the Court refused to hold a truck driver proceeding on a green light guilty of negligence for failing to observe that plaintiff’s husband was not going to stop in obedience to a red signal light, which was not working at the time. In support of the ruling the opinion cited Manuel v. Bradford, La.App., 166 So. 657; Clark v. DeBeer, La.App., 188 So. 517; Seiner v. Toye Brothers Yellow Cab Company, La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, La.App., 22 So.2d 473, and concluded by adopting with approval the following observations :
“ ‘ “We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.” ’ ” (Emphasis supplied.)
These principles of law govern the situation here.
*587 Hence, we find no error in the judgment appealed and it is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.