206 So.2d 579 (1968)
John C. VALENTI, Mrs. Louise Douglas Valenti, Charles DiBenedetto, Mrs. Earline Douglas DiBenedetto, Owen D. Watts, Maggie Lela Methvien and Elmer Brown
v.
E. A. COURTNEY, Olivia B. Courtney and Hartford Accident & Indemnity Company.
No. 7140.
Court of Appeal of Louisiana, First Circuit.
January 29, 1968.
Tom H. Matheny, of Pittman & Matheny, Hammond, for appellants.
Alex Wall, of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
*580 LOTTINGER, Judge.
This is an intersectional collision case. Suit was brought by John Valenti, Louise Valenti, Charles DiBenedetto, Earline DiBenedetto, Owen D. Watts, Maggie Watts and Elmer Brown against Mr. and Mrs. E. A. Courtney and their liability insurer, Hartford Accident & Indemnity Company. Judgment was rendered by the Trial Court in favor of plaintiffs, and the defendant, Hartford Accident & Indemnity Company, has perfected this appeal, to which all plaintiffs, except Elmer Brown, has answered seeking an increase in the award of damages.
The record points out that on the morning of December 26, 1963, Mrs. Louise Valenti was driving an automobile owned by Elmer Brown, and was accompanied by Mrs. Earline DiBenedetto, Claudia DiBenedetto, Ruby Charline DiBenedetto and Mrs. Maggie Watts. Mrs. Valenti was traveling at approximately 20 miles per hour in an easterly direction on West Church Street in the City of Hammond. The defendant's car was being driven by Mrs. Courtney in a southerly direction on North Spruce Street. West Church Street runs in a generally easterly and westerly direction, and North Spruce Street runs in a generally northerly and southerly direction, and these two streets intersect with each other.
West Church Street is the favored street, and there is a stop sign approximately 12 feet back, from where the two streets meet, on North Spruce Street.
Mrs. Courtney testified that she was traveling at a reasonable rate of speed. As she approached the intersection, she stopped "at" the stop sign. She stated that she stopped at the sign itself, and was therefore approximately 12 feet away from the intersection. There is further testimony that she looked both ways and upon seeing no oncoming traffic, proceeded slowly across the intersection. Mrs. Courtney did testify that her visibility was partially blocked because of trees growing next to the street and in the vicinity of the stop sign, which trees would be in a direct line of vision between her and the automobile being driven by Mrs. Valenti, and that she did not attempt to drive closer to the edge of the intersection to get a better view, but merely proceeded across. Mrs. Courtney testified that she never saw the other car until after the accident.
Mrs. Valenti testified that she was traveling at approximately 20 miles per hour on Church Street; that as she approached Spruce Street, she looked for traffic and she saw Mrs. Courtney's car below the stop sign and assumed that she was going to shop. Instead of stopping at the stop sign, Mrs. Courtney entered the intersection and continued, causing Mrs. Valenti to immediately apply the full pressure of her brakes, thus causing the passengers of the automobile driven by Mrs. Valenti, including Mrs. Valenti, to receive injury. Mrs. Valenti, by the full application of her brakes, left 12 feet of skid marks. The left front of the car driven by Mrs. Valenti and the right rear side of the Courtney car were damaged. The car Mrs. Valenti was driving did not leave its lane of traffic.
The defendant contends that the Trial Court erred in finding Mrs. Courtney negligent in any way, in failing to find Mrs. Valenti contributorily negligent and in failing to bar her from recovering under the doctrine of last clear chance.
The facts point out quite clearly that when Mrs. Courtney approached the intersection, she stopped at a stop sign which was located twelve feet away from the commencement of the intersection. At this point she then looked to her left and then to her right for oncoming traffic. Mrs. Courtney admitted that her vision to her right was partially blocked by a growth of trees. Even though her vision was partially blocked, Mrs. Courtney did not exercise the necessary care in that she did not move her automobile closer to the intersection so that she could better see if there was any oncoming *581 traffic from her right. Rather than taking this precautionary measure, Mrs. Courtney proceeded uninterruptedly into the intersection, unaware that there was oncoming traffic.
There is no question but that a driver is presumed to have seen that which he should have seen, and with that rule as a basis, there is no question but that Mrs. Courtney was negligent in proceeding into the intersection in the face of oncoming traffic.
Mrs. Valenti was proceeding on a favored street at approximately twenty miles per hour when she realized that Mrs. Courtney would not obey the stop sign and would proceed into the intersection. In Henderson v. Travelers Indemnity Company, La.App., 158 So.2d 365, the Court stated at page 368:
"A motorist on a right-of-way street with knowledge of the location of a stop sign or that he has a favorable signal light, has a right to assume that any driver, approaching the intersection from a less favorable street, will observe the law and bring his vehicle to a complete stop, or will await a favorable signal before entering the intersection. Such motorist can indulge in this assumption until he sees, or should see that the driver of the other car has not observed, or is not going to observe, the law. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company of Chicago, 232 La. 831, 95 So.2d 328; Steele [for Use and Benefit of Steele] v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339."
Considering this line of jurisprudence and the facts of this case in that Mrs. Valenti had the right of way, was not driving very fast, that upon observing that Mrs. Courtney would not obey the stop sign, she immediately applied her brakes, we can find no negligence on the part of Mrs. Valenti, and therefore concur with the Trial Judge in his finding of no negligence on the part of Mrs. Valenti.
The appellant very strongly argues that Mrs. Valenti had the last clear chance to avoid the accident, and in not doing so, she is barred from recovery. In Rottman v. Beverly, 183 La. 947, 165 So. 153, 156, the Supreme Court discussed the doctrine of last clear chance and we feel that the following best summarizes that doctrine, to-wit:
"If a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent act if he can."
The record points out that the weather condition on the date of the accident was clear and dry and both Church Street and Spruce Street were hard surface roadways of approximately eighteen feet in width each. Mrs. Valenti testified that as soon as she realized that Mrs. Courtney was not going to stop at the stop sign, she immediately applied her brakes. The investigating officer placed the point of impact at two feet across the center line of Church Street and into the lane of traffic of Mrs. Valenti. Therefore, in attempting to reconstruct the accident as it actually happened, we can only determine but that Mrs. Valenti was traveling at approximately twenty miles per hour when she first realized that Mrs. Courtney would not stop at the stop sign. At this point she immediately applied her brakes rather than attempting to swerve and miss the Courtney automobile. In applying her brakes, she left twelve feet of skid marks and ultimately collided with the Courtney vehicle in Mrs. Valenti's own lane of traffic. From the testimony of Mrs. Courtney, as to the fact that she did not even feel the impact or collision, we *582 must assume that the impact itself was very light and therefore the vehicle which Mrs. Valenti was operating was not traveling very fast immediately prior to the impact. This is to say, that if Mrs. Valenti would have had a few more feet of stopping distance, she would have brought her automobile to a complete stop prior to the point of impact. But, we do not feel that it can be held against Mrs. Valenti that she did not attempt to swerve and miss the Courtney automobile rather than applying her brakes, or that she did not realize sooner than she did that Mrs. Courtney would not stop at the stop sign. We therefore conclude that Mrs. Valenti did everything within her power to avoid the accident, and she therefore cannot be held responsible for the ultimate collision.
This, therefore, disposes of the liability question in this case, and we have concluded that the Trial Judge was correct in his finding liability and responsibility for this accident with Mrs. Courtney.

QUANTUM
The defendant further alleges that the Trial Court erred in finding that any of the plaintiffs were injured except Mrs. Valenti, and in finding that Mrs. Valenti was injured to the extent that it did.
The damage done to the automobile driven by Mrs. Valenti was in the sum of $67.42, and on the trial of this case, it was stipulated that this amount was correct. There is, therefore, no question as to this award of damages.
As to Mrs. Valenti, the Trial Judge awarded the sum of $3,500.00 for pain and suffering. From the scene of the accident, Mrs. Valenti was taken immediately to Dr. Feder's office. Dr. Feder testified that when he saw Mrs. Valenti she was incoherent, in a state of shock, complained of pain in her head, neck, chest and that she could not open her mouth due to the impaction of an upper false plate of teeth which had incurred when her mouth hit the steering wheel of the automobile. Her complaints were so acute and her pain was so intense in her posterior cervical region coupled with marked cervical spasm and almost absolute limitation of motion of the head on the shoulders that Dr. Feder hospitalized her for treatment and observation. She was so incoherent when he first examined her in his office that she could not relate what had happened. It was only after one week in the hospital that she lost her confusion and dazed sensorium.
Dr. Feder's diagnosis was as follows:
"This woman incurred an acute sprain of the cervical neck with contusion of the face and jaw and impaction of the upper plate; contusion of the chest, sprain of the thoracic and lumbarregion; post traumatic cervical syndrome consisting of neck pain with referred pain to the right trapezius and arm and shoulder, headache, vertigo, malaise."
She was in the hospital from December 26, 1963, to January 10, 1964, a total of sixteen days. While in the hospital she was treated with cervical traction, bed rest, supplemented with muscle relaxants and analgesics. When Mrs. Valenti applied the brakes, she was caused to go forward and her mouth hit the steering wheel. The impact of this collision of her mouth with the steering wheel caused the upper plate of her false teeth to be impacted or jammed into her mouth. The swelling in her mouth was so immediate as to create a tremendous suction on the upper plate so that this upper plate could not be removed. Dr. Feder testified that it was necessary to administer drugs which would reduce this swelling, and it was not until three or four days later that the swelling had subsided sufficiently so as to enable the removal of the upper plate.
After Mrs. Valenti was released from the hospital, it was still necessary for her to undergo extensive therapy and treatment, and this even included traction at the doctor's office and at her home. Dr. Feder's records indicated that he saw and treated *583 Mrs. Valenti fifty-eight times in his office. Dr. Feder initially discharged Mrs. Valenti on June 12, 1964, and subsequent to her discharge, he saw her again on July 6 and July 15. On her last visit to his office, Dr. Feder still found evidence of some spasm and restricted motion.
The defense introduced the deposition of Dr. Haslam who examined Mrs. Valenti in April of 1964. Upon reading the deposition, we can find no extreme difference of opinion as to the patient's condition, inasmuch as Dr. Haslam examined Mrs. Valenti approximately four months after the accident, and he did not have the benefit of the numerous examinations which Dr. Feder had.
The Trial Judge awarded Mr. Valenti the sum of $1,493.71 for damages which he sustained as far as hospital and doctors' bills and the loss of a wrist watch which Mrs. Valenti was wearing. He also alleged loss of wages but failed to prove same by a preponderance of the evidence. We can find no error in this award of the Trial Judge. As far as physical pain and suffering of Mrs. Valenti, the Trial Court awarded her the sum of $3,500.00, which we feel is adequate to compensate her for injuries.
With regard to Mrs. DiBenedetto Dr. Feder stated:
"Examination after the accident showed a contusion over the left interior and lateral shoulder region. Motion was limited and the patient would not permit me to raise her arm due to increased pain. The patient complained of being dazzed and she could not move her neck without pain or discomfort. Examination of the neck showed moderate limitation of motion with tenderness over the cervical neck region."
Mrs. DiBenedetto received injuries consisting of cervical sprain with shoulder involvement and also mid back pain. Dr. Feder wanted to hospitalize his patient, but she elected to rely on office treatment. He treated her until March 27, 1964, and then believing she had reached a satisfactory recovery stage, he discontinued the intense therapy. She had up to that time been using traction in his office as well as other treatment. She had to return to his office on April 20, 1964, because her complaints and pain had again intensified. She again underwent treatment until about June 9, 1964. Mrs. DiBenedetto saw Dr. Feder approximately sixty-three times. Because Mrs. DiBenedetto was not as severely injured as Mrs. Valenti, the Trial Court awarded her $1,500.00 and awarded her husband the sum of $497.08 for medical expenses. We can find no error in these awards and therefore affirm the ruling of the Trial Court.
Mrs. Watts incurred a sprain of the cervical neck and sprain of the lumbosacrum. She also incurred a contusion of her frontal skull region with a mild concussion. She was hospitalized from December 27, 1963, until January 4, 1964. After her discharge from the hospital, she received intensive care in Dr. Feder's office until February 21, 1964. The Trial Judge awarded Mrs. Watts the sum of $1,500.00 for her pain and suffering and awarded her husband the sum of $677.22 for medical expenses. We can find no error with these awards and therefore affirm the ruling of the Trial Court.
The Trial Court also awarded expert fees to Dr. Chandler in the amount of $50.00 and to Dr. Feder in the amount of $100.00 and also the cost of a deposition of Dr. Chandler in the amount of $12.00 and taxed fees as cost. These have not been questioned on this appeal, and we find no error in this award.
In light of the Supreme Court's pronouncement in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64, at page 67 (1964), wherein the Court stated:
"On appeal, if the appellate court affirms the lower court and quantum is the issue, *584 the court should then review all the facts and circumstances on which the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the `much discretion' vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants," we have carefully studied the record in this proceeding, and particularly the portion concerning the physical injury and have concluded that the Trial Judge has not abused his discretion so as to justify an amendment of his judgment.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed.
Judgment affirmed.