LOTTINGER, Judge.
Petitioner, Hobart O. Pardue, Jr., brings this suit for alleged damages arising out of a collision with an automobile driven by the liability insured of defendant, General Accident Fire and Life Assurance Corporation, Ltd. The Lower Court awarded judgment in favor of petitioner and against defendant for pain and suffering in the sum of $5,000.00, past and future loss and wages and physical impairment in the sum of $2,500.00, loss of recreational facilities in the sum of $1,000.00, and $1,007.54 for specials.
The defendant has taken an appeal. An answer to the appeal has been filed by petitioner wherein he seeks an increase in quantum.
The accident in question occurred on June 25, 1969, at the intersection of 1-12 and U. S. Highway 61 in the city of Baton Rouge, Louisiana. The driver of the vehicle insured by defendant collided with the rear end of petitioner’s vehicle, causing damage to the automobile and the alleged injuries to petitioner. On this appeal, the defendant raises no question of liability, the only issue before us is quantum.
Dr. A. J. Feder, a general practitioner in Hammond, Louisiana, testified that he commenced treating the petitioner for the in *779 juries sustained from the accident on June 26, 1969. At that time, the petitioner told him that the vehicle in which he was driving was rear-ended and knocked about 10 feet. His complaint was in the region of the neck, headaches, pain in the anterior chest and pain from the neck to the mid-back region. There was some tenderness in the lower lumbar region but no spasm. Dr. Feder diagnosed the injuries as “sprain of cervical neck, acute”. He gave petitioner medication for pain and muscular aches. Dr. Feder testified that the petitioner was disabled until July 24, 1969, and that on August 7, 1969, there were no more objective symptoms, petitioner had recovered completely and he was discharged. Dr. Feder testified that the pain in the upper lumbar region went away quickly. His bill for services to petitioner was in the sum of $172.00.
The only other medical testimony in the record is that of Dr. Herbert Plauche, an orthopedic expert of Baton Rouge, Louisiana. Dr. Plauche testified that he was first visited by the petitioner on September 18, 1970, at which time he complained of pain in the lower back and legs. His history shows that three days prior thereto the petitioner was swimming and the next day woke up with severe pain and stiffness in the lower back. Dr. Plauche was of the opinion that “. . . he was suffering from a lumbosacral strain, acute moderately severe in degree”. He placed petitioner in the Baton Rouge General Hospital on September 18, 1970, where he prescribed complete bedrest, pelvic traction, analgesics, muscle relaxants and heat. As the patient progressed, he received intermittent pelvic traction, ultra sound, heat, massage for muscles of the lower back and exercises for the back. Dr. Plauche testified that the patient progressed “rather well”.
Petitioner was discharged on September 23, 1970, with mild aching in his lower back and stiffness. Dr. Plauche testified that he told petitioner upon his discharge to avoid heavy lifting, apply heat and prescribed analgesics and muscle relaxants. On January 26, 1971, petitioner was referred to a physical therapist. Dr. Plauche testified that petitioner would have future difficulty in lifting 10 or 15 pounds weight from the level of his feet up to the level of his waist, but not from his waist level to another waist level.
The issues on this appeal are as follows:
(1) Has appellee met his burden of proof with respect to damages which he alleges he suffered?
(2) Did the Trial Court abuse its discretion in the amount of the damages awarded to appellee ?
The defendant strongly contends that the petitioner has fallen woefully short of proving to a legal certainty that all of the damages alleged in his petition were “caused, precipitated or accelerated by the accident in suit”. In support of this contention, defendant cites Carlisle v. Employers Mutuals of Wausau, La.App., 220 So.2d 152, wherein the Court said:
“Our settled jurisprudence is that in a suit for personal injuries the plaintiff bears the burden of proving his claim to a legal certainty by a preponderance of the evidence and this includes the burden of offering sufficient proof that the injuries complained of were caused, precipitated or accelerated by the accident in suit. * * *»
With regard to the question of the injuries sustained by petitioner in the automobile accident, Dr. Feder found injury only in the regions of the thoracic and cervical spine. He found only tenderness in the dorsal and lumbosacral spine but no muscle spasms. On cross examination, he testified that he saw no reason to pursue or treat the minor subjective signs referrable to the sacral area of the back. His testimony with reference to the lower back injury, was as follows:
“A. I’m not in any position to evaluate that at all. All I can say is that I gave him no treatment for it. What symptoms *780 he had were probably reflects from the original injury and seem to have cleared up completely and gave me no reason to go any further in examining his back. No more than it would- for me to go ahead and examine his toes.”
With regard to the complaints following the automobile accident of June, 1969, and the swimming incident of September, 1970, Dr. Plauche, on direct examination, testified as follows:
“O. Now, as a result of your examination of Mr. Pardue, could you state your opinion as to whether or not the cause of his hospitalization on September 18th was in any way related to the accident which had occurred prior to his visit to you on the 18th ?
A. I think, in all probability it would be reasonable to assume that a person who had been free of symptoms of back pain, prior to it he didn’t have any type, and who .continued to have occasional symptoms of back pain and stiffness would in all probability be more susceptible to further back injury than a normal person would.
Q. So in essence you are stating that there was some causal relationship between the accident and the resulting injury that caitsed him to be hospitalized?
A. Based on my physical findings and history and based on the graphic findings I think it would be a reasonable conclusion that there may be some cause to link them together.” (TR-42)
On cross-examination Dr. Plauche’s attempt to relate the injuries became even less certain:
“Q. Now, if as a result of his injury he was treated only for injuries of the cervical and dorsal spine, would this tend in your mind to raise a doubt of some relationship between the injury suffered in July, 1969, and the complaint which presented itself in September, 1970?
A. Certainly it would raise some doubt if he denied any history of low back pain if he was treated only for upper back and cervical spine injury.
Q. Did you happen to check with Dr. Feder on what he was treated for?
A. No sir, I did not.
Q. If by July 19, 1969, Dr. Feder stated that he had no symptoms whatsoever objectively in the dorsal spine and if Dr. Feder stated that by August 15th of 1969, there were no objective findings in the range of motion in his neck were normal and without pain, would this be some question in your mind as to the relationship of the back injury of September 1970 and the accident of July, 1969?
A. Certainly it . . .of course, you haven’t given me any findings of what the examination of the lower back stated.
Q. I don’t know what the examination stated.
A. In the absence of any subjective or objective complaints, I don’t know how to make an evaluation whether or not the patient was having any difficulty other than what he said.
Q. Well, if he was only treated for the cervical and dorsal spine then we could there’s a medical possibility that we can exclude any more back injury in the back, is this correct?
A. Based on the information, I think that would be correct, yes.” (TR-50, 51)
He further testified on cross-examination :
“Q. And if his only complaint in July 69 was to the cervical and dorsal region of the neck as a result of this accident, *781 and in your opinion, we could pretty well exclude that as a result of this this accident any lumbosacral problems?
A. Based on the information he gave me he had absolutely no complaints. I would be somewhat skeptical of the patient having back problems at that time. If he had low back injury he should have complaints referable to the lower back.” (TR-53, 54)
Dr. Plauche said it would require “severe lumbosacral strain or a lumbosacral strain” to experience a return of back pain.
In Trahan v. Lewis, La.App., 223 So.2d 511, the Court in finding that the petitioner had failed to sustain the burden of offering sufficient proof that the injuries complained of were caused, precipitated or accelerated by the accident in question, said:
“But Dr. Grunsten disagreed with the conclusion of Drs. Mayfield and Ber-tucci; he was of the opinion that a flareup in 1967, approximately one and a half years after the accident and a year after Mrs. Trahan was asymptomatic, in • the absence of some damage to the bone or disc structure (and here there was none) and in the absence of other intervening injury, was ‘very remotely likely.’ Dr. Grunsten did not say such an event would be impossible, apparently since medically speaking almost anything is possible, but he did say he had never seen a case in which this happened. In our opinion he testified as positively as can be expected of a medical expert that the so called flareup in 1967 did not result from the injury sustained by Mrs. Trahan in the accident in suit.
(2, 3) Thus we have a situation where all of the medical testimony is offered by the plaintiffs and their medical experts disagree. Under these circumstances, especially in view of the fact that the question prevented calls for an opinion in a particular medical field and is not concerned with treatment as such and that the question involves orthopedics in which Dr. Grunsten, and not Drs. May-field and Bertucci, is the expert, we are of the opinion that plaintiffs have failed to carry their burden or proving the alleged flareup resulted from the accident.”
Unsupported subjective complaints are insufficient to support a claim for physical damages.
In Stelly v. New York Fire & Marine Underwriters, Inc., La.App., 242 So.2d 925, the Court refused to accept the causal linkup which plaintiff’s experts attempted between the accident sued upon and a subsequent injury, because the expert based his opinion on the self-serving medical history given him by petitioner.
We feel, therefore, that the petitioner has failed to sustain his burden of proving that the complained of condition of his lower back has causal connection of the accident of June, 1969. Dr. Feder who had known and treated petitioner since petitioner was a boy, testified that the pain in the lower lumbar region complained of during 1969 was mild and he paid no attention to it. He testified that the petitioner had recovered completely and discharged from his care in August, 1969. The testimony of the orthopedic expert, Dr. Plauche, failed to link any connection between the automobile accident and the complaints of September, 1970, some fifteen months later.
We are therefore of the opinion that the Trial Judge committed manifest error in concluding that the low back condition treated by Dr. Plauche was causally connected with the accident herein.
As the evidence indicates that the swimming incident caused separate and distinct injuries from those sustained in the automobile collision, at least the petitioner has failed to prove otherwise, the petitioner should be allowed only those damages which resulted from the automobile accident of June 25, 1969. His own physician who *782 treated him for the said injuries said that petitioner had completely recovered by August 7, 1969.
In Valenti v. Courtney, La.App., 206 So.2d 579, we awarded $3,500.00 for pain and suffering for injuries of a much more severe nature than those presently before us and where petitioner was hospitalized for some fifteen days. It is interesting to note that Dr. Feder was also the treating physician in that case.
In Trosclair v. Higgins, La.App., 216 So.2d 558, $1,200.00 was awarded for pain and suffering to a woman who suffered acute cervical sprain requiring treatment from early September until December and who wore a supporting collar on and off during this time.
We awarded $3,000.00 for pain and suffering in Boudreaux v. Continental Insurance Co., La.App., 242 So.2d 585 for cervical neck sprain, muscle spasms and recurring intermittent pain of a somewhat similar nature to that of petitioner.
We feel that the sum of $3,000.00 will adequately compensate petitioner for the pain and suffering sustained as a result of the automobile accident.
 However, the bare testimony that he was unable to handle certain types of business, and that he referred it elsewhere, is not sufficiently certain to permit an award. Such facts can be proved with reasonable certainty, and plaintiff’s failure to do so is fatal to his claim in that respect. He did show that he was forced to pay $100.00 to another attorney for making an appearance on his behalf two days after the accident, and he is entitled to receive that amount as special damages.
Other special damages resulting from the accident include $82.45 for automobile repair, $50.54 for car rental, $17.00 paid to Dr. Scott, $10.99 in drug bills, $60.00 for x-rays, and $172.00 paid to Dr. Feder. These total $492.98.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to reduce the award to the sum of $3,492.98 and, as so amended, it will be affirmed.
Judgment amended and affirmed.